## ALVAREZ Y SANCHEZ v. UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 69.   Submitted January 11, 1910.—Decided February 21, 1910.

The rights of private individuals recognized and protected by the Treaty of 1898 with Spain did not include the salability of official positions, such as procurador; nor did the United States intend to so restrict its own sovereign authority that it could not abolish the system of perpetual and salable offices which is entirely foreign to the conceptions of this people.

Even if Congress did not intend to modify the treaty of 1898 by the Foraker Act of April 12, 1900, 31 Stat. 77, if that act is inconsistent with the treaty it must prevail, and be enforced despite any provision in the treaty. *Hijo* v. *United States,* 194 U. S. 315.

Congress recognized the action of the military authorities in Porto Rico in 1898 in abolishing the office of procurador and validated it by the provision in the Foraker Act of 1900 continuing the laws and ordinances then in force except as altered and modified by the military orders in force.

The abolition of a perpetual and salable office, established under the Spanish law in Porto Rico prior to its cession to the United States, does not violate any provision of the Constitution or infringe any right of property which the holder of the office can assert against the United States. *O'Reilly* v. *Brooke,* 209 U. S. 45.

42 C. Cl. 458, affirmed.

*Mr. S. Mallet-Prevost* for appellant:

Claimant's petition alleged a good cause of action. His

office was property under the Spanish law. It was not impaired during the military occupation of Porto Rico. The Treaty of Paris confirmed the claimant's property. The United States deprived the claimant of his property after the Treaty of Paris and became liable to compensate him for the value thereof. *O'Reilly* v. *Brooke*, 209 U. S. 45, is not decisive of this case.

The present case differs from it in several material points. In the present case the appellant was not possessed of a mere claim against Spain for the deprivation of his property, but was in the undisturbed enjoyment and possession of the same, at the time of the military occupation; he was actually engaged in the performance of the duties of his office. Moreover, this suit is not against an individual officer of a government, but against the government itself, which divested him of the property which the Treaty of Paris expressly confirmed in him. Furthermore, this suit involves the Island of Porto Rico and not that of Cuba; and it is well recognized that a different state of affairs existed in the two islands.

The claimant's right constituted property under the Spanish law. Civil Code of Porto Rico of 1889, Arts. 336, 349.

Moreover, the provisions of the Code of 1855 clearly indicate that Spain recognized that the holders of the offices held in perpetuity could not be deprived thereof without compensation. Arts. 126–129, 140–141, Civil Code, Porto Rico, 1855. It is important in this connection to note that the claimant's solicitorship was a perpetual and not a life solicitorship. The latter were of a wholly different character.

Prior to April 11, 1899, the date of the exchange of ratifications of the Treaty of Paris, and of the commencement of the sovereignty of the United States in Porto Rico, neither the office nor the property therein had been destroyed or abrogated.

The attempt to make the termination of Spanish sovereignty cotemporaneous with conquest cannot be supported.

The United States did not acquire Porto Rico by conquest,

but by cession. When the Protocol of Agreement was signed August 12, 1898, the United States was actually engaged in hostility in the field with Spanish troops in Porto Rico. Senate Doc. No. 62, pt. 2, 3rd Sess., 55th Cong., vol 8.

The United States obtained possession of Porto Rico by virtue of the protocol, and obtained title to the Island by virtue of the cession by the Treaty of Paris.

The sovereignty of the United States commenced, and therefore that of Spain ceased, at the exchange of ratifications of the Treaty of Paris. *Dooley* v. *United States*, 182 U. S. 222, 230; *De Pass* v. *Bidwell*, 124 Fed. Rep. 615, 619; *Howell* v. *Bidwell*, 124 Fed. Rep. 688, 689; *Armstrong* v. *Bidwell*, 124 Fed. Rep. 690, 692, 693; *Ponce* v. *Roman Catholic Church*, 210 U. S. 296, 309.

Subsequent to the protocol, and prior to the exchange of ratifications of the Treaty of Paris, the United States held Porto Rico by military occupation, which could not affect the sovereignty of Spain and did not destroy the property in the office of the appellant. Wheaton on International Law, 4th ed., § 545, citing Vattel, Bk. III, ch. 13, §§ 197, 198; Davis, Int. Law, 333.

The mere fact of military occupation did not give the military forces sovereign rights. The rights of military occupation are distinctly limited. Hall on Int. Law, 2d ed., 430; Lieber's Code, Inst. for Govt. of Armies in the Field, § 38.

The mere fact of military occupation does not abrogate or destroy public offices or the title thereto. *Ketchum* v. *Buckley*, 99 U. S. 188.

The Treaty of Paris confirmed appellant's property rights. The treaty contemplated the preservation of rights as rights are understood under the Spanish law, as well as under the American law. *O'Reilly* v. *Brooke*, 135 Fed. Rep. 384, 391; Atty. Genl. Griggs, 22 Op. Atty. Genl. 617; *United States* v. *Reynes*, 9 How. 151; *Strother* v. *Lucas*, 12 Pet. 410, 466. See also *Ponce* v. *Roman Catholic Church*, 210 U. S. 309.

It is impossible that the property in the office in question

was destroyed by the treaty without violating the express terms of Art. VIII.

While the United States may take real or personal property whenever its necessities or the exigencies of the occasion demand, the Fifth Amendment guarantees that when this governmental right is asserted it shall be attended by compensation. *United States* v. *Lynah,* 188 U. S. 445, 465.

The provisions of the Constitution relating to life, liberty, and property are applicable to Porto Rico. *Downes* v. *Bidwell,* 182 U. S. 244.

It is immaterial whether the property so taken is of a tangible or intangible nature. *Monongahela Navigation Co.* v. *United States,* 148 U. S. 312, 329; *O'Reilly* v. *Brooke,* 135 Fed. Rep. 384.

*Mr. Assistant Attorney General John Q. Thompson,* with whom *Mr. Franklin W. Collins* was on the brief, for the United States:

The military government of the United States in occupation of Porto Rico absolutely displaced Spanish sovereignty and required no further treaty to confirm its supremacy. 2 Halleck, 444; *Dooley* v. *United States,* 182 U. S. 230.

The office of Solicitor or Procurador was not property under Spanish law or within § 2 of Art. VIII of the Treaty of 1898. If it was property it was subject to confiscation by an invading army. Hall's Int. Law, 5th ed., 471; Whiting's War Powers, 2d ed., 340; 2 Halleck, 75; Taylor's Int. Law, 539; *United States* v. *Pacific R. R. Co.,* 120 U. S. 228.

An incumbent of an office has not under our own system any property in it. *Tool Co.* v. *Norris,* 2 Wall. 55; *Taylor and Marshall* v. *Beckham,* 178 U. S. 547, 577; *State* v. *Dews,* Charl. (Ga.) 397.

The office in question was a mere function or public station created by the Crown of Spain. It was not, nor can it be regarded as, property of a tangible nature. While spoken of as salable, it was not private property, nor property of

any nature, but a public office under the Crown of Spain, as much so as that of the highest office of the Spanish régime in Porto Rico.

A positive and affirmative act on the part of the United States was necessary to secure appellant in the exercise of the privileges of the office of Procurador. See Magoon's Report, 198.

The office in question was not in harmony with the spirit of our institutions. As to establishment of new system of courts in New Mexico, see *Leitensdorfer* v. *Webb*, 20 How. 176.

Acquired territory is held by the new sovereignty subject to its institutions and not to the laws of the former sovereignty. Vattel's Law of Nations, Bk. 1, ch. 19, §§210, 244, 245; and Bk. 2, ch. 7, § 80; *Pollard's Lessee* v. *Hagan*, 3 How. 225.

International law does not require a nation to protect property the existence of which is inconsistent with its system of government. That the United States should be called upon to protect slave property, titles of nobility, monopolies, or purchasable offices would be clearly inimical to the spirit of our laws and the genius of our institutions.

Where the enforcement of the foreign law would contravene some important and established policy of the State of the forum, or where such enforcement would contravene the canons of morality established by civilized society, the enforcement of such foreign laws is forbidden. Minor's Conflict of Laws, ch. 2, § 5, p. 9; *Ch., R. I. & P. Ry.* v. *McGlenn*, 114 U. S. 546.

The case of *O'Reilly* v. *Brooke*, 209 U. S. 45, controls this case.

Mr. Justice HARLAN delivered the opinion of the court.

The appellant, an inhabitant and citizen of Porto Rico, seeks to recover from the United States the value of a certain office held by him in that Island before and during the war with Spain, of which office, it is alleged, he was illegally deprived by the United States. A demurrer to the complaint was sustained and judgment given for the United States, the

opinion of the Court of Claims being delivered by Chief Justice Peelle. 42 Ct. Cl. 458, 472.

The complaint which, on demurrer, was adjudged to be bad, presents—using substantially the words of the complaint—the following case:

In the year 1878 the claimant, Sanchez, purchased from one Florenzio Berrios y Lopez, for a valuable consideration, the office known as "Numbered Procurador [Solicitor] of the Courts of First Instance of the capital of Porto Rico," at Guayamo, in perpetuity, and in the same year the Governor General of Porto Rico issued a provisional patent in his favor. In 1881 the claimant's tenure of the office was approved and confirmed, and a final patent therefor was issued by the King of Spain, in accordance with the laws, practice and custom of Spain and Porto Rico governing the sale, surrender and transfer of such an office. The claimant, it is alleged, thereby became vested with all the legal rights and privileges appertaining to the office.

From the date of the provisional patent issued to him until, as will be presently stated, he was deprived of his office, August 31st, 1899, the claimant exercised all the rights and privileges belonging to the office of Procurador or Solicitor. Under the laws of Spain and Porto Rico, it will be assumed, the office was transferable in perpetuity and vested the incumbent with exclusive rights and privileges, and as a consequence thereof the claimant was entitled under the laws of Spain in force in Porto Rico, during all the time he held the office, to perform its duties and receive its fees and emoluments which, prior to August 31st, 1899, averaged, it is alleged, more than $200 per month, of which he could not be legally deprived except by due process of law.

On the tenth day of December, 1898, a Treaty of Peace between the United States and Spain was concluded and having been duly ratified by the respective countries, was duly proclaimed April 11th, 1899. The Treaty contained these provisions: "Spain cedes to the United States the island of

Porto Rico and other islands now under Spanish sovereignty in the West Indies, and the Island of Guam in the Marianas or Ladrones." Art. 7. ". . . And it is hereby declared that the relinquishment or cession, as the case may be, to which the preceding paragraph refers, cannot in any respect impair the property or rights which by law belong to the peaceful possession of property of all kinds, of provinces, municipalities, public or private establishments, ecclesiastical or civic bodies, or any other associations having legal capacity to acquire and possess property in the aforesaid territories renounced or ceded, or of private individuals, of whatsoever nationality such individuals may be." Art. 8.

A military government was organized in Porto Rico and was maintained there from October, 1898, up to and after April 30th, 1900. On the latter date, General Davis, as Military Governor, issued what is known as General Order 134, containing these among other paragraphs: "XI. The office of Solicitor ('procurador') is abolished. Those who have heretofore practiced as such before any court and are of good repute shall, in default of lawyers, have the right to be appointed municipal judges or clerks of Municipal Courts. XII. Hereafter, litigants who do not appear personally shall be represented before the Supreme Court and District Courts exclusively by a lawyer, no powers of attorney being necessary therefor; it shall be the duty of the courts to suspend from the practice of his profession any lawyer who shall, without authority, assume to represent a litigant; but this shall not affect the civil or criminal liability which such lawyer may thereby incur. In the Municipal Courts, litigants may represent themselves or may be represented by an attorney in fact, resident of the place. XIII. For the purpose of conducting the proceedings, lawyers may make use of such agents as they may by writing designate to the court." That order was issued without notice to claimant and without any complaint being made as to the manner in which he was exercising his rights or discharging his duties.

On the twelfth day of April, 1900, Congress passed (to take effect May 1st, 1900) what is known as the Foraker Act temporarily to provide revenues and civil government for Porto Rico and for other purposes. That act contained this provision: "Sec. 8. That the laws and ordinances of Porto Rico now in force shall continue in full force and effect, except as altered, amended or modified hereinafter, or as altered, or modified by military orders and decrees in force when this act shall take effect, and so far as the same are not inconsistent or in conflict with the statutory laws of the United States not locally inapplicable, or the provisions hereof, until altered, amended, or repealed by the legislative authority hereinafter provided for Porto Rico, or by act of Congress of the United States." 31 Stat. 77, 79, c. 191, April 12, 1900.

The reasonable value, the claimant alleges, of the "transferable" or "Numbered Procurador of the Courts of First Instance of the capital of Porto Rico," in perpetuity, was $50,000, for which amount he asks judgment. No compensation has ever been made to claimant for the loss of his office, and no action has been taken on his present claim either by Congress or by any Department of the United States Government.

Such is the case made by the claimant in his petition.

The claimant proceeds in his petition on the ground that the effect of the eighth section of the act of Congress of April 12th, 1900, was to confiscate, finally and effectually, without compensation to him, the office which he claims to have lawfully purchased in perpetuity, prior to the occupation of Porto Rico by the military forces of the United States, and the cession of that Island to this country; which confiscation, he insists, could not have been legally done without violating the Treaty between the United States and Spain which was in force when the act of 1900 was passed.

We do not think that the present claim is covered by the Treaty. It is true that a Treaty negotiated by the United States is a part of the Supreme Law of the Land, and that it is

expressly provided in the Treaty in question that it "cannot in any respect impair the property or rights which by law belong to the peaceful possession of property of all kinds . . . of private individuals." But, clearly, those provisions have no reference to public or quasi-public stations, the functions and duties of which it is the province of government to regulate or control for the welfare of the people, even where the incumbents of such stations are permitted, while in the discharge of their duties to earn and receive emoluments or fees for services rendered by them. The words in the Treaty "property . . . of private individuals," evidently referred to ordinary, private property, of present, ascertainable value and capable of being transferred between man and man.

When the United States, in the progress of the war with Spain, took firm, military possession of Porto Rico, and the sovereignty of Spain over that Island and its inhabitants and their property was displaced, the United States, the new Sovereign, found that some persons claimed to have purchased, to hold in perpetuity, and to be entitled, without regard to the public will, to discharge the duties of certain offices or positions which were not strictly private positions in which the public had no interest. They were offices of a quasi-public nature, in that the incumbents were officers of court, and in a material sense connected with the administration of justice in tribunals created by government for the benefit of the public. It is inconceivable that the United States, when it agreed in the Treaty not to impair the property or rights of private individuals, intended to recognize, or to feel itself bound to recognize, the salability of such positions in perpetuity, or to so restrict its sovereign authority that it could not, consistently with the Treaty, abolish a system that was entirely foreign to the conceptions of the American people, and inconsistent with the spirit of our institutions. It is true that Congress did not, we assume, intend by the Foraker Act to modify the Treaty, but if that act were deemed inconsistent with the Treaty the act would

prevail; for, an act of Congress, passed after a Treaty takes effect, must be respected and enforced, despite any previous or existing Treaty provision on the same subject. *Ribas y Hijo* v. *United States*, 194 U. S. 315, 324, and authorities cited. If, originally, the claimant lawfully purchased, in perpetuity, the office of Solicitor (Procurador) and held it when Porto Rico was acquired by the United States, he acquired and held it subject, necessarily, to the power of the United States to abolish it whenever it conceived that the public interest demanded that to be done. The intention of Congress in relation to the office of Solicitor or Procurador by the Foraker Act cannot be doubted—indeed, its abolition by Congress is made the ground of the present action and claim. Upon the acquisition of Porto Rico that Island was placed under military government, subject, until Congress acted in the premises, to the authority of the President as Commander-in-Chief acting under the Constitution and laws of the United States. Porto Rico was made a Department by order of the President on the eighteenth of October, 1898. By his sanction, it must be presumed, General Order No. 134 was made, abolishing the office of Solicitor or Procurador. That order was recognized by Congress, if such recognition was essential to its validity, when Congress, by the Foraker Act of 1900, provided that the laws and ordinances of Porto Rico, then in force, should continue in full force and effect, *except* "as altered or modified by military orders in force" when that act was passed. It is clear that claimant is not entitled to be compensated for his office by the United States because of its exercise of an authority unquestionably possessed by it as the lawful sovereign of the Island and its inhabitants. The abolition of the office was not, we think, in violation of any provision of the Constitution, nor did it infringe any right of property which the claimant could assert as against the United States. See *O'Reilly de Camara* v. *Brooke*, 209 U. S. 45, 49. The judgment of the Court of Claims must be affirmed.

*It is so ordered.*