Booth, J.,
delivered the opinion of the court:
This is a demurrer to claimant’s petition. The claimant, Liliuokalani, was formerly Queen of the Hawaiian Islands. Her cause of action is predicated upon an alleged “ vested equitable life interest ” to certain lands described in the petition, known as “ crown lands,” of which interest she was divested by the defendants. It is conceded that the absence of such an interest rendered the crown lands subject to the usual transmission of title appurtenant to a change of sovereignty. The solution of the question involves a detailed examination of the various acts of the Hawaiian legislative body and reference to various sections of the Hawaiian constitutions, which for convenience will be set forth as an appendix to this opinion.
The origin of the crown lands and history connected therewith is epitomized by Justice Bobertson in an exhaustive opinion in 2 Haw., 715. Previous to the reign of Kamehameha III a system of land tenure akin to the ancient feudal system prevailed in the islands. In 1839 the dissatisfaction and disputes engendered by the payment of rents, the rendition of personal service, etc., imposed upon landholders, encouraged the King to bring about a settled policy with reference to land titles. In 1840 Xamehameha III granted the first constitution, in which it is recited that: *425 “ Kamehameha I was the founder of the Kingdom, and to him belonged all the land from one end of the islands to the other, though it was not his own private property. It belonged to the chiefs and people in common, of whom Kamehameha I was the head and had the management of the landed property.” In another clause it is provided that all lands forfeited for nonpayment of taxes shall revert to the King. (Fundamental Laws of Hawaii.) In 1846 a board of land commissioners was appointed by law, charged with the duty of dividing the rights of the various individuals in lands, and quieting titles thereto, and finally, in March, 1848, the King “ signed and sealed two instruments contained in the Mahele Book,” by which he demised specified lands, described therein to the chiefs and people and reserved unto himself the lands now in suit, then and ever afterwards known as the crown lands. On June 7, 1848, the legislature for the islands confirmed the action of the King, and thereafter all portions of the royal domain except the reserved crown lands were treated as public domain and managed and disposed of by appropriate legislation. The title to the crown lands was vested in the Sovereign; he leased and alienated the same at his pleasure; the income and profits therefrom were his without interference or control. In January, 1865, the unlimited latitude allowed the King in the control of the crown lands found them charged with mortgages to secure sums of money which threatened their extinguishment, and the legislature, by the act of January 3, I860, relieved the lands from the oppression of the mortgages, by the issuance of bonds, provided against their alienation, and put their management and control in the hands of commissioners as provided in the act. Subsequently, on July 6, 1866, the legislature relieved the crown lands from the liquidation of the bonds previously provided for, and the Government-assumed and paid the mortgage debt.
The claimant became Queen of the islands on January 20, 1891, succeeding her brother, King Kalakaua. On January 17, 1893, she yielded her authority over the islands by an instrument in writing, abdicated her throne, and was succeeded in authority by a provisional government. On July *426 4, 1894, said provisional government was succeeded by a government known as the Republic of Hawaii, and thereafter the Hawaiian Islands were peaceably, upon request, on August 12, 1898, annexed to and became a part of the United States of America.
The history of the Hawaiian Islands from the earliest time to the ascension of Kamehameha I is the usual story of conquest. Kamehameha I established a monarchy; his title and sovereignty was the usual one of conquest, and while the attendant civilization was much advanced the King retained his sovereign authority and prerogatives. The act of Kamehameha III in 1848 was, as before observed, the culmination of numerous dissensions as to land tenures, and the King divided the public domain as hereinbefore set forth. Since 1848 the crown lands have descended to the reigning sovereign. At the April term of the Supreme Court of Hawaii in 1864 the nature and extent of the King’s title in the crown lands was squarely before the court, and the court in an exceedingly able opinion held that under said act “ the lands descended in fee, the inheritance being limited, however, to the successors to the throne, and each successive power may regulate and dispose of the same according to his will and pleasure, as private property, in like manner as was done by Kamehameha III.”
Taking the language of the court we find an estate in lands presumably vested in fee simple in so far as the Crown is concerned, as distinguished from the personality of the Sovereign, and yet limited as to possession and descent by conditions abhorrent to a fee-simple estate absolute. The act of 1865 further curtails the title vested in the King. The preamble of the act recites expressly the nature and extent of the King’s tenure, “ for the purpose of maintaining the royal state and dignity,” followed by appropriate legislation to thereafter prevent their alienation or incumbrance. <
The act of 1865 to become effective under the Hawaiian constitution required «the approval of the King. (Fundamental Laws of Hawaii, p. 112.) On January 3, 1865, Kamehameha Y approved the statute which expressly divested the King of whatever legal title or possession he *427 theretofore had in or to the Crown lands. (6 Haw., 195-208.) The Hawaiian Government in 1865 by its own legislation determined what the court is now asked to determine.
The decision of the court in 2 Haw., supra, was some time previous to the passage of the act of 1865, and although the court sustained the right of dower in the widow of the King, it is clear from the opinion that the crown lands were treated not as the King’s private property in the strict sense of the term. While possessing certain attributes pertaining to fee-simple estates, such as unrestricted power of alienation and incumbrance, there were likewise enough conditions surrounding the tenure to clearly characterize it as one pertaining to the. support and maintenance of the Crown, as distinct from the person of the Sovereign. They belonged to the office and not to the individual. Significant "in this connection is the transaction with Claus Spreckels in July, 1882. Her Highness Kuth Keelikolani, sister and heir of Kamehameha V, though never succeeding to the throne, conveyed to Spreckels all her interest in the crown lands. The sovereign authorities hastened to dispute the transaction, and subsequent legislation by .way of compromise restored the attempted conveyance to the general body of the crown lands. (Appendix, p. 8.) Since 1865, so far as the record before us discloses, the character of the crown lands has not been changed; they have passed to the succeeding monarch. The income, less expense of management, has been used to support the royal office and treated as belonging to the Crown. All other property of the King has uniformly passed to his heirs regardless of his royal successor.
The court in 2 Haw., 722, in commenting upon the motives of the King in executing the conveyances of March 8, 1848, attributes the establishment of the crown land estate to a desire to prevent the impoverishment of the Sovereign in the event of a successful foreign invasion. This statement has been seized upon and assiduously emphasized by the claimant. It is not in harmony with the detailed history given by the court in its opinion. On page 719 the court says: “ It was the imperative necessity of separating and defining the rights of the several parties interested in the *428 lands which led to the institution of the board of land commissioners, and to the division made by the King himself, with the assistance of his privy council.” It was in fact the usual contest between the monarch and his people. Certainly under a monarchy it would be unusual for the reigning sovereign to divest himself of all landed property; always jealous of the dignity attached to the Crown they were likewise alert in securing sufficient revenue to support its royal pretensions.
Kamehameha III reorganized the Government, granted a constitution, organized executive departments, established courts, and otherwise extended the liberties of his people and protected their rights of property. Suppose that during the progress of his reign a pretender for the throne had successfully established his claim and deposed the monarch without changing the existing governmental conditions. Is it possible that Kamehameha III could have recovered the rents and profits from the crown lands during the remainder of his life? (Fundamental Laws of Hawaii.)
It seems to the court that the crown lands acquired their unusual status through a desire of the King to firmly establish his Government by commendable concessions to his chiefs and people out of the public domain. The reservations made were to the Crown and not the King as an individual. The crown lands were the resourceful methods of income to sustain, in part at least, the dignity of the office to which they were inseparably attached. When the office ceased to exist they became as other lands of the Sovereignty and passed to the defendants as part and parcel of the public domain. (O'Reilly de Camara v. Brooke, 209 U. S., 45; Hijo v. United States, 194; Sanchez v. United States, 216 U. S., 167.)
The constitution of the Republic of Hawaii, as respects the crown lands, provided as follows:
“ That portion of the public domain heretofore known as crown land is hereby declared to have been heretofore, and now to be, the property of the Hawaiian Government, and to be now free and clear from any trust of or concerning the same, and from all claim of any nature whatsoever upon the rents, issues, and profits thereof. It shall be subject to alienation and other uses as may be provided by law. All valid leases thereof now in existence are hereby confirmed.”
*429 Section 99 of the organic act of 1900 (31 Stat. L., 161) adopts substantially the same language. We have not entered into a discussion of the defenses predicated upon the above provisions of law, believing the case disposed of before we reached them. It is, however, worthy of note that the organic act of 1900 puts an end to any trust — if the same possibly existed — and the petition herein was not filed until January 20,1910, more than six years thereafter.
Demurrer sustained, with leave to the claimant to amend her petition within ninety days.
APPENDIX.
[Translation of the Great Mahele or división of lands by the King.]
Know all men by these presents, that I, Kamehameha III, by the grace of God, King of these Hawaiian Islands, have given this day of my own free will, and have made over and set apart forever to the chiefs and people the larger part of my royal land, for the use and benefit of the Hawaiian Government; therefore, by this instrument I hereby retain (or reserve) for myself and for my heirs and successors forever my lands inscribed at pages 178, Í82, 184, 186, 190, 200, 204, 206, 210, 212, 214, 216, 218, 220, 222 of this book; these lands are set apart for me and for my heirs and successors forever as my own property exclusively.
Know all men by these presents, that I, Kamehameha III, by the grace of God, King of these Hawaiian Islands, do hereby give, make'over, and set apart forever to the chiefs and people of my Kingdom, and convey all my right, title, and interest in the lands situated here in the Hawaiian Islands, inscribed on pages 179 to 225, both inclusive, of this book, to have and to hold to my chiefs and people .forever.
AN ACT Relating to the lands of His Majesty the King and of the Government.
Whereas it hath pleased His Most Gracious Majesty Kamehameha III, the King, after reserving certain lands to himself as his own private property, to surrender and forever make over unto his chiefs and people the greater portion of his royal domain;
And whereas it hath pleased our Sovereign Lord the King to place the lands so made over to his chiefs and people in the keeping of the House of Nobles and Representatives, or such person or persons as they may from time to time appoint, to be disposed of in such manner as the House of *430 Nobles and Representatives may direct, and as may best promote the prosperity of this Kingdom and the dignity of the Hawaiian Crown: Therefore,

Be it enacted by the House of Nobles-and Representatives of the Hawaiian Islands in Legislative Council assembled:

That, expressing our deepest thanks to His Majesty for this noble and truly royal gift, we do hereby solemnly confirm this great act of our King and declare the following-named lands, viz: •
(Here follows a description of the lands.)
To be the private lands of His Majesty Kamehameha III, to have and to hold to himself, his heirs, and successors, forever; and said lands shall be regulated and disposed of according to his royal will and pleasure, subject only to the rights of tenants.
And be it further enacted, That we do hereby, in the name of the chiefs and people of the Hawaiian Islands, accept of the following lands, viz:
(Here follows a description of the lands.)
Made over to the chiefs and people by our Sovereign Lord the King, and we do hereby declare those lands to be set apart as the lands of the Hawaiian Government, subject always to the rights of tenants. And we do hereby appoint the minister of the interior and his successors in office to direct, superintend, and dispose of said lands, as provided in the act to organize the executive departments, done, and passed at the Council House in Honolulu, the 27th day of April, A. D. 1845: Provided, however, That the minister of the interior and his successors in office shall have the power, upon the approval of the King in Privy Council, to dispose of the government lands to Hawaiian subjects upon such other terms and conditions as to him and the King in Privy Council may seem best for the promotion of agriculture and the best interests of the Plawaiian Kingdom.
And be it further'enacted, That, in accordance with ancient custom, the following land, viz:
(Here follows a description of the land.)
Shall be and the same are hereby set apart for the use of the fort in Honolulu, to be cultivated by soldiers and other tenants under the direction of the governor of Oahu and his successors in office, native-born chiefs of the Hawaiian Islands, according to the instructions of the minister of the interior and his successors in office, approved by the King in Privy Council.
Done and passed at the Council House in Honolulu this 7th day of June, A. D. 1848.
Kamehameha.
KeoNI Ana.
*431 AN ACT To relieve the royal domain from incumbrances and to render the same inalienable.
Whereas by the act entitled “An act relating to the lands of His Majesty the King and of the Government,” passed on the 7th day of June, A. D. 1848, it appears by the preamble that His Most Gracious Majesty Kamehameha III, the King, after reserving certain lands to himself as his own private property, to surrender and make over unto his chiefs and people the greater portion of his royal domain; and whereas by the same act it was declared that certain lands therein named shall be the private lands of Kamehameha III, to have and to hold to himself, his heirs, and successors forever, and that the said lands shall be regulated and disposed of according to his royal will and pleasure, subject only to the rights of tenants; and whereas by the proper construction of the said statute the words “ heirs and successors ” mean the heirs and successors to the royal office; and whereas the history of said land shows that they were vested in the King for the purpose of maintaining the royal state and dignity, and it is therefore disadvantageous to the public interest that the said lands should be alienated or the said royal domain diminished; and whereas, further, during ,the two late reigns the said royal domain has been greatly diminished and is now charged with mortgages to secure considerable sums of money: Now, therefore,
Be it enacted by the King and the Legislative Assembly of the Hawaiian Islands, in the Legislature of the Kingdom assembled:
■ SectioN 1. The minister of finance is hereby authorized to issue exchequer bonds, with coupons attached, to the amount of not more than $30,000, said bonds to bear interest at not more than 12 per cent per annum, payable half yearly, and to be redeemable at such times within the next twenty years as the said minister of finance shall deem expedient, which said bonds shall be issued whensoever necessary to the commissioners of crown lands, hereinafter provided for, to be used to extinguish those mortgages which may remain unsatisfied after the administrator of his late Majesty’s estate has exhausted all the estate belonging to his late Majesty, in a private capacity, which the said administrator may be legally entitled to use for the payment of the debts of the estate.
Sec. 2. Full authority is hereby given to such commissioners, jointly with the minister of finance, to negotiate for the redemption of the mortgages in the preceding section referred to, and dispose of the said exchequer bonds for that purpose in such manner as may be most advantageous to the public interest.
*432 Sec. 3. It is further enacted that so many of the lands ■which by the statute enacted on the 7th of June, 1848, are declared to be the private lands of His Majesty Kamehameha III, to have and to hold to himself, Ms heirs, and successors forever, as may be at this time unalienated, and have descended to His Majesty Kamehameha V, shall be henceforth inalienable, and shall descend to the heirs and successors of the Hawaiian Crown forever; and it is further enacted that it shall not be lawful hereafter to execute any lease or leases of the said lands for any term of years to exceed thirty.
Sec. 4. The commissioners of the crown lands shall have full power and authority to make good and valid leases of the said lands for any number of years not exceeding thirty; but in no case shall it be lawful to collect the rents on the same for more than one year in advance, or to receive anything in the nature of a bonus for signing the said lease, and all the rents, profits, and emoluments derived from the said lands, after deducting the necessary and proper expenses of managing the same, shall be for the use and benefit of the reigning sovereign, and payable by the said commissioners to the order of the King, except when the King shall be a minor, and then they shall be invested for the benefit of the said minor King, as the legislature may direct, until the said minor shall have arrived at the age of majority, and excepting further as in the succeeding section set forth.
Sec. 5. There shall be set apart by the said commissioners one-fourth part of the annual revenue of the said estate, wlfich shall be paid into the public treasury and be devoted first to the payment of the interest on the exchequer bonds herein above provided for, and so much of the said fourth part of the said income as may be in excess of the said interest on the said bonds shall be applied to the payment of the principal of the said bonds until the entire sum by this act authorized to be issued shall be fully paid.
Sec. 6. The board shall consist of three persons, to be appointed by His Majesty the King, two of whom shall be appointed from among the members of his cabinet council, and serve without any remuneration, and the other shall act as land agent, and shall be paid out of the revenues of the said land such sum as may be agreed by His Majesty the King.
Approved this 3d day of January, A. D. I860.
Kamehameha K,.
RESOI/UTION.
Whereas this Legislative - Assembly has become apprised that nearly all of the revenue of the royal domain, accruing *433 since the death of his late Majesty Kamehameha IV, of gracious memory, has been used to liquidate the debts with which the estate had been burdened during his late Majesty’s lifetime, so that His Majesty, our most gracious Sovereign, to this time has derived but small advantage therefrom;
And whereas this Assembly has likewise been apprised that the amount of indebtedness upon the said estate at the time of his late Majesty’s decease was very large, and greatly exceeded the amount which was supposed to be due;
And whereas this Legislative Assembly gratefully appreciate the consideration of His Majesty in allowing nearly the entire revenue of the estate to be devoted to the liquidation of the debt;
And whereas more especially this Assembly and the nation gratefully appreciate His Majesty’s generosity iii consenting to the limitation of the royal domain, as at present by law provided:
Now therefore be it resolved, That this Legislative Assembly do, in the name of the Hawaiian Nation, assume the payment of the exchequer bonds issued by the minister of finance to the commissioners of crown lands, by virtue of Section I of “An act to relieve the royal domain from incum-brances, and to render the same inalienable,” passed on the 3d day of January, A. D. 1865; and do hereby discharge the commissioners of crown lands having in charge the said domain, and their successors in office, from all liabilities to pay the said bonds, princial or interest, or any part thereof. -
Approved this 6th day of July, A. I). 1866.
Kamehameha R.
AN ACT To authorize the commissioners of crown lands to convey certain portions of such lands to Claus Spreckels in satisfaction of all claims he may have on such lands.
_ Whereas _ Claus Spreckels claims to be entitled to an undivided moiety of the lands known as crown lands, by virtue of conveyance from Her Highness Ruth Keelikolani; and
Whereas it is expedient and advisable that such claims should be satisfied or compromised: Therefore

Be it enacted by the Legislative Assembly of the Hawaiian Islands in the Legislature of the Kingdom assembled:

SeotioN 1. The commissioners of crown lands are hereby authorized and empowered to make proper deeds of assurance, to the said Claus Spreckels, of the several lands specified in the schedule hereto, in full satisfaction and discharge of all claims the said Claus Spreckels may have or claim m the said lands known as crown lands.
Sec. 2. Before receiving such deeds or assurances the said Claus Spreckels shall, by proper assurance, convey, relin *434 quish, ahd quitclaim to the said commissioners of crown lands all his right and interest in and to the residue of the said crown lands.
Sec. 3. The minister of the interior is hereby authorized to prepare and deliver to the said Claus Spreckels a royal patent for the said land to be conveyed to him.
THE SCHEDuLE.
The Ahupuaa of Wailuku, in the island .of Maui, with the His therein or thereunto belonging, and estimated to contain twenty-four thousand acres or thereabouts.
Approved this 21st day of July, A. D. 1882.
Kalakaua Rex.
AN ACT To declare certain lands io be part of tbe crown lands and royal • domain.
Whereas certain unassigned lands have hitherto and at all time heretofore been held to be part of the crown lands and royal domain and as such were and are now in the possession of the crown land commissioners: Therefore

Be it enacted by the Legislature of the Hawaiian Kingdom:

SectioN 1. The Ahupuaa’s known under the following names and situated as hereinafter set forth, that is to say:
1. Kuliouou, in the district of Kona, island of Oahu;
2. Keaau, in the district of Waianae, island of Oahu;
3. Hakalauiki, in the district of TIilo, island of Hawaii;. _
_ 4. Manowaiopae, in the district of Hilo, island of Hawaii;
5. Kamoku, in the island of Lanai;
6. Paoma-i, in the island of Lanai ;
7. Waiaha 2, in the island of Hawaii;
8. Kapaakea, in the island of Molokai;
9. Waiohuli, in the island of Maui;
are hereby declared to be a- part of the crown lands and royal domain of the Hawaiian Kingdom, and as such subject to the provisions of the act entitled “An act to' relieve the royal domain from incumbrances, and to render the same inalienable,” approved the 3d day of January, A. D. 1865; and the possession of said lands is hereby confirmed in accordance with the provisions of sections 3 and 4 and 6 of said act to the crown land commissioners and successors in office.
Sec. 2. This act shall be in force from and after its approval.
Approved this 14th day of November, A. D. 1890.
Kalakaua Hex.
By the King:
C. N. SpenceR,

Minister of the Interior.

*435 PROTEST OE TI-IE QUEEN, JANUARY 17, 1893.
■ I, Liliuokalani, by the grace of God and under the constitution of the Hawaiian Kingdom, Queen, do hereby solemnly protest against any and all acts done against myself and the constitutional government of the Hawaiian Kingdom, by certain persons claiming to have established a provisional government of and for this Kingdom.
That I yield to the superior force of the United States of America, whose minister plenipotentiary, his excellency John L. Stevens, has caused United States troops to be landed at Honolulu and declared that he would support the provisional government.
Now, to avoid any collision of armed forces and perhaps the loss of life, I do, under this protest and impelled by said force, yield my authority until such time as the Government of the United States shall, upon the facts being presented to it, undo the action of its representative and reinstate me and the authority which I claim as the constitutional sovereign of the Hawaiian Islands.
(Signed) Liliuokalani.
RESOLUTION Of the Senate of Hawaii ratifying the treaty of annexation.

Be it resolved by the Senate of the Republic of Hawaii:

That the Senate hereby ratifies and advises and consents to the ratification by the President of the treaty between the Republic of Hawaii and the United States of America on the subject of the annexation of the Hawaiian Islands to the United States of America, concluded at Washington on the 16th day of June, A. D. 1897, which treaty is word for word as follows:
“ The Republic of Hawaii and the United States of America, in view of the natural dependence of the Hawaiian Islands upon the United States, of their geographical proximity thereto, of the preponderant share acquired by the United States and its citizens in the industries and trade of said islands, and of the expressed desire of the Government of the Republic of Hawaii that those islands should be incorporated into the United States as an integral part thereof, and under its sovereignty, have determined to accomplish by treaty an object so important to their mutual and permanent welfare.
“ To this end the high contracting parties have conferred full powers and authority upon their respectively appointed plenipotentiaries, to wit:
“ The President of the Republic of Hawaii, Francis March Hatch, Lorrin A. Thurston, and William A. Kinney.
*436 “ The President of the United States, John Sherman, Secretary of State of the United States.
“ ARTICLE I.
“ The Republic of Hawaii hereby cedes absolutely and without reserve to the United States of America all rights of sovereignty of whatsoever kind in and over the Hawaiian Islands and their dependencies; and it is agreed that all the territory of and appertaining to the Republic of Hawaii is hereby annexed to the United States of America under the name of the Territory of Hawaii.
“ ARTICLE II.
“ The Republic of Hawaii also cedes and hereby transfers to the United States the absolute fee and ownership of all public, government, or crown lands, public buildings or edifices, ports, harbors, military equipments, and all other public property of every kind and description belonging to the Government of the Hawaiian Islands, together with every right and appurtenance thereunto appertaining.
“ The existing laws of the United States relative to public lands shall not apply to such lands in the Hawaiian Islands; but the Congress of the United States shall enact special laws for their management and disposition. Provided, that all revenue from or proceeds of the same, except as regards such part thereof as may be used or occupied for the civil, military, or naval purposes of the United. States, or may be assigned for the use of the local government, shall be used solely for the benefit of the inhabitants of the Hawaiian Islands for educational and other public purposes.
“Article III.
“ Until Congress shall provide for the government of such islands, all the civil, judicial, and military powers exercised by the officers of the existing government in said islands shall be vested in such person or persons and shall be exercised in such manner as the President of the United States shall direct; and the President shall have power to remove said officers and fill the vacancies so occasioned.
“ The existing treaties of the Hawaiian Islands with foreign nations shall'forthwith cease and determine, being replaced by such treaties as may exist,, or as may be hereafter concluded, between the United States and such foreign nations. The municipal legislation of the Hawaiian Islands, *437 not enacted for the fulfillment of the treaty (treaties) so extinguished, and not inconsistent with this treaty, nor contrary to the Constitution of the United States, nor to any existing treaty of the United States, shall remain in force until the Congress of the United States shall otherwise determine.
“ Until legislation shall be enacted extending the United States customs laws and regulations to the Hawaiian Islands, the existing customs relations of the Hawaiian Islands with the United States and other countries shall remain unchanged.
“ARTICLE IV.
“ The public debt of the Republic of Hawaii, lawfully existing at the date of the exchange of the ratifications of this treaty, including the amounts due to depositors in the Hawaiian Postal Savings Bank, is hereby assumed by the Government of the United States; but the liability of the United States in this regard shall in no case exceed $4,000,000. So long, however, as the existing government and the present commercial relations of the Hawaiian Islands are continued, as hereinbefore provided, said Government shall continue to pay the interest on said debt.
“Article V.
“ There shall be no further immigration of Chinese into' the Hawaiian Islands, except upon such conditions as are now or may hereafter be allowed by the laws of the United States, and no Chinese by reason of anything here contained shall be allowed to enter the United States from'the Hawaiian Islands.
“Article VI.
“ The President shall appoint five commissioners, at least two of whom shall be residents of the Hawaiian Islands, who shall, as soon as reasonably practicable, recommend to Congress such legislation concerning the Territory of Hawaii as they shall deem necessary or proper.
“Article VII.
“ This treaty shall be ratified by the President of the Republic of Hawaii, by and with the advice and consent of the Senate, in accordance with the Constitution of the said Republic, on the one part; and by the President of the United *438 States, by and with the advice and consent of the Senate, on the other, and the ratifications hereof shall be exchanged at Washington as soon as possible. .
“ In witness whereof the respective plenipotentiaries have signed the above articles, and have hereunto affixed their seals.
“ Done in duplicate at the city of Washington this sixteenth day of June, one thousand eight hundred and ninety-seven.
“ [seal.] (Sig.) FeaNcis MaRci-i Hatch.
“ [seal.] (Sig.) LokriN A. ThurstoN.
“[seal.] (Sig.) William A. Kinney.
“ [seal.] (Sig.) JoiiN Sherman.”
I hereby certify that the foregoing resolution was unanimously adopted at the special session of the Senate of the Republic of Hawaii on the 9th day of September, A. D. 1897.
William C. Wilder, President.
Attest:
J. F. Clay,

Glerh of the Senate.

JOINT RESOLUTION To provide for annexing tlie Hawaiian Islands to tlie United States.
Whereas the Government of the Republic of Hawaii having, in due form, signified its consent, in the manner provided by its constitution to cede absolutely and without reserve to the United States of America all rights of sovereignty of whatsoever kind in and over the Hawaiian Islands and their dependencies, and also to cede and transfer to the United States the absolute fee and ownership of all public, government, or crown lands, public buildings or edifices, ports, harbors, military equipment, and all other public property of every kind and description belonging to the Government of the Hawaiian Islands, together with every right and appurtenance thereunto appertaining: Therefore
Resolved by the Senate and House of Representatives of the United States of America in Congress assembled, That said cession is accepted, ratified, and confirmed, and that the said Hawaiian Islands and their dependencies be, and they are hereby, annexed as a part of the territory of the United States and are subject to the sovereign dominion thereof, and that all and singular the property and rights hereinbefore mentioned are vested in the United States of America.
The existing laws of the United States relative to public lands shall not apply to such lands in the Hawaiian Islands; but the Congress of the United States shall enact special *439 laws for their management and disposition: Provided, That all revenue from or proceeds of the same, except as regards such part thereof as may be used or occupied for the civil, military, or naval purposes of the United States, or may be assigned for the use of the local government, shall be used solely for the benefit of the inhabitants of the Hawaiian Islands for educational and other public purposes.
Until Congress shall provide for the government of such islands all the civil, judeial, and military powers exercised by the officers of the existing government in said islands shall be vested in such person or persons and shall be exercised in such manner as the President of the United States shall direct; and the President shall have the power to remove said officers and fill the vacancies so occasioned.
The existing treaties of the Hawaiian Islands with foreign nations shall forthwith cease and determine, being replaced by such treaties as may exist, or as may be hereafter concluded, between the United States' and such foreign nations. The municipal legislation of the Hawaiian Islands, not enacted for the fulfillment of the treaties so extinguished, and not inconsistent with this joint resolution nor contrary to the Constitution of the United States nor to any existing treaty of the United States, shall remain in force until the Congress of the United States shall otherwise determine.
Until legislation shall be enacted extending the United States customs laws and regulations to the Hawaiian Islands the existing customs relations of the Hawaiian Islands with the United States and other countries shall remain unchanged.
The public debt of the Eepublic of Hawaii, lawfully existing at the date of the passage of this joint resolution, including the amounts due to depositors in the Hawaiian Postal Savings Bank, is hereby assumed by the Government of the United States; but the liability of the United States in this regard shall in no case exceed four million dollars. So long, however, as the existing government and the present commercial relations of the Hawaiian Islands are continued as hereinbefore provided said government shall continue to pay the interest on said debt.
There shall be no further immigration of Chinese into the Hawaiian Islands, except upon such conditions as are now or many hereafter be allowed by the laws of the United States; no Chinese, by reason of anything herein contained, shall be allowed to enter the United States from the Hawaiian Islands.
The President shall appoint five commissioners, at least two of whom shall be residents of the ITawaiian Islands, *440 who shall, as soon as reasonably practicable, recommend to Congress such legislation concerning the Hawaiian Islands as they shall deem necessary or proper.
Seo. 2. That the commissioners hereinbefore provided for shall be appointed by the President, by and with the advice and consent of the Senate.
Sec. 8. That the sum of one hundred thousand dollars, or so much thereof as may be necessary, is hereby appropriated, out of any money in the Treasury not otherwise appropriated, and to be immediately available, to be expended at the discretion of the President of the United States of America,, for the purpose of carrying this joint resolution into effect.
SeeeNO E. Payne,

Speaker of the House of Representatives Pro Tempore.

GaRRet A. HobaRt,

Vice-President of the United States

and President of the Senate.

Approved, July 7th, 1898. •
William McKinley.