MARIO MERCADO E HIJOS, Petitioner,
Appellant,

v.

Jose M. FELICIANO, Trustee, et al.,
Appellees.

Matter of **PUERTO RICO RAILROAD &
TRANSPORT COMPANY**, Bankrupt.

No. 5355.

United States Court of Appeals
First Circuit.

Oct. 31, 1958.

Pedro M. Porrata and Charles R. Cuprill, Ponce, P. R., on brief for appellant.

Jose L. Novas, Hartzell, Fernandez & Novas and L. E. Dubon, San Juan, P. R., on brief for appellees.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

On this appeal, we have to consider the correctness of an order of the United States District Court for the District of Puerto Rico dated February 13, 1958, denying a petition for review of an order of the referee in bankruptcy which, on motion, dismissed a petition for reversion of certain real estate that had previously been taken on eminent domain, and which, it was disclosed, had ceased to be used for the public purposes stated in the condemnation proceeding. The case was submitted to us by both parties on the record and briefs, without waiting for oral argument at our October session in Boston, to which session we had advanced the case, upon motion, pursuant to our Rule 3, 28 U.S.C.A.

The determination of the issues now before us takes us back to some pretty old historical events.

Some time between 1884 and 1898 a railroad company, La Compañía de los Ferrocarriles de Puerto Rico, acquired by eminent domain a strip of land ten meters wide approximately circumscribing the island of Puerto Rico. Certain parcels of this land, which are involved in this case, were carved out from holdings, the remainders of which constitute five farms now owned by the present appellant. The latter, however, does not rely upon any formal assignment to it of the right, if any, to reversion of the condemned strips.

The successor in title to the condemnor, Puerto Rico Railroad & Transport Company, filed in the court below a petition for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. Though this petition was approved by the district court on December 8, 1954, the latter Railroad was eventually adjudicated bankrupt by an order entered September 11, 1956, and the case was referred shortly thereafter to Mr. W. H. Beckerleg, the referee in bankruptcy for the District of Puerto Rico. Early in August, 1957, the referee gave notice of the public sale of the lands of the bankrupt.

Subsequently appellant, Mario Mercado e Hijos, filed on August 20, 1957, in the bankruptcy proceedings then pending before the referee, a "Petition for Reversion of Real Property", in which it was alleged that petitioner was the successor in title to the owners of the holdings in question at the time of the condemnation, on the basis of which it therefore claimed that it held a "right of reversion" to the condemned property once it became evident that the property was no longer to be used for the public purposes described in the original condemnation proceeding. The petition prayed that an order be entered directing the bankrupt to advise appellant of the compensation paid for the parcels at the time of their condemnation, and to cede title to the parcels to appellant

upon payment by it to the bankrupt estate of that sum. The petition was opposed by the trustee, by the bankrupt, and by a general creditor of the bankrupt, who now stand as the appellees in the present appeal. The referee entered an order dismissing the petition on December 2, 1957; and the district court, on February 13, 1958, entered its order denying a petition for review of the referee's order.

Preliminarily, we think we ought to note a possible question as to our own appellate jurisdiction, even though no jurisdictional challenge has been made by the appellees.

The Bankruptcy Act, as amended, contains the following provision (52 Stat. 854 (1938), 11 U.S.C.A. § 47):

"(a) The United States courts of appeals, in vacation, in chambers, and during their respective terms, as now or as they may be hereafter held, are [hereby] invested with appellate jurisdiction from the several courts of bankruptcy in their respective jurisdictions in proceedings in bankruptcy, either interlocutory or final, and in controversies arising in proceedings in bankruptcy, to review, affirm, revise, or reverse, both in matters of law and in matters of fact: *Provided, however,* That the jurisdiction upon appeal from a judgment on a verdict rendered by a jury shall extend to matters of law only: *And provided further,* That when any order, decree, or judgment involves less than $500, an appeal therefrom may be taken only upon allowance of the appellate court.

"(b) Such appellate jurisdiction shall be exercised by appeal and in the form and manner of an appeal."

It would seem that the amount now in controversy is susceptible of monetary determination, and would be the difference between the price realizable by public sale of the property in question (or perhaps the present value of the condemned land) and the amount appellant would have to pay to the bankrupt estate in order to exercise its alleged "right of reversion". Neither the Brief nor the Record Appendix contains any indication of the present value of the lands involved, or the amount received in compensation when the lands were condemned. The notice of appeal is not printed in the Record Appendix; but reference to the original papers reveals that a notice of appeal dated March 14, 1958, was filed in the district court. Annexed to this notice of appeal was an affidavit executed by one of the attorneys for the appellant "That the value of the lands claimed in this case is in excess of five hundred ($500.00) dollars." In view of what we have stated, this allegation in the affidavit is hardly equivalent to a claim that the order appealed from involves more than $500. Therefore, under the statutory provision, it would seem that an appeal could not be taken to this court as a matter of right, by the filing of a notice of appeal in the district court, but rather that, under our present Rule 12, a petition for the allowance of the appeal should have been filed with the clerk of the court of appeals.

However, as we pointed out in Benitez v. Ferran's Estate, 1 Cir., 1944, 143 F. 2d 435, 436, in view of the decision of the Supreme Court in R. F. C. v. Prudence Securities Advisory Group, 1941, 311 U. S. 579, 61 S.Ct. 331, 85 L.Ed. 364, we are bound to hold that this failure to file in the court of appeals a petition for allowance of an appeal is merely "a procedural irregularity rather than a jurisdictional defect, and we have power to allow the appeal, treating the notice of appeal filed in the court below as an informal substitute for the application to us." In view of the fact that the bankruptcy proceedings now pending in the district court will probably be impeded by the presentation of the claims of others to a "right of reversion" similar to that asserted by the present appellant, it seems that a "special equity" exists which should move this court to exercise its discretion to treat the notice of appeal as an informal, irregular application

for leave to appeal. Consequently we now grant leave to appeal; and without further reference to our appellate jurisdiction we proceed to a discussion of the merits of the case.

On January 10, 1879, the Kingdom of Spain established a law of eminent domain, which was extended to Puerto Rico by royal decree of June 13, 1884. Section 43 of this law read as follows (see the translation prepared in March, 1901, by the Division of Insular Affairs of the War Department appearing in H. R. Doc. No. 1484, 60th Cong., 2d Sess., Laws, Ordinances, Decrees, and Military Orders Having the Force of Law, Effective in Porto Rico May 1, 1900, pt. 3, p. 2123):

"Art. 43. If the work requiring the expropriation is not executed, or if executed there should result some surplus piece of land, as also in case the estates should remain without application on account of the object of the forcible expropriation having terminated, the original owner may recover that which was expropriated, returning the sum which he may have received or the amount which proportionately corresponds to the part, unless the parcel referred to should be a part that, without being indispensable to the work, was ceded for the convenience of the property owner, according to the last provision of article 23. * * "

Thus, undoubtedly, at the time the property now in question was condemned, there existed, under the law then applicable, an inchoate "right of reversion" in favor of the "original owner" under the conditions stated in § 43.

As later appears, the legislature of Puerto Rico has professed to repeal the whole of the old Spanish law of eminent domain. But it is claimed by appellant that this inchoate right of reversion was preserved inviolate by Art. VIII of the Treaty of Paris, which became a valid treaty between the Kingdom of Spain and the United States by the exchange of ratifications on April 11, 1899. Article VIII of the treaty read, in part, as follows (30 Stat. 1758):

"And it is hereby declared that the relinquishment or cession, as the case may be, to which the preceding paragraph refers, cannot in any respect impair the *property or rights which by law belong to the peaceful possession of property* of all kinds, of provinces, municipalities, public or private establishments, ecclesiastical or civic bodies, or any other associations having legal capacity to acquire and possess property in the aforesaid territories renounced or ceded, or of private individuals, of whatsoever nationality such individuals may be." (Italics added.)

We do not think that the claim based on this article of the treaty is correct. The reference in the treaty to "the peaceful possession of property" would seem to exclude the coverage of such a speculative, remote and inchoate right of reverter as was created over fifty years ago when the property was condemned for railroad uses. The foregoing section of the Treaty of Paris was construed by the Supreme Court in Alvarez y Sanchez v. United States, 1910, 216 U. S. 167, 175, 30 S.Ct. 361, 363, 54 L.Ed. 432, as evidently referring "to ordinary private property, of present, ascertainable value, and capable of being transferred between man and man."

But assuming for the moment that this "right of reversion" was preserved by Art. VIII of the Treaty of Paris, it is clearly the domestic law of the United States that the provisions of a treaty may be supplanted by a subsequent act of Congress. As the Supreme Court commented in Alvarez y Sanchez v. United States, 1910, 216 U.S. 167, 175–176, 30 S.Ct. 361, 363, 54 L.Ed. 432: If any provision of the Foraker Act had to be deemed inconsistent with the Treaty of Paris, "the act would prevail; for, an Act of Congress, passed after a treaty takes effect, must be respected and enforced, despite any previous or existing treaty provision on the same subject.

Ribas y Hijo v. United States, 194 U.S. 315, 324, 24 S.Ct. 727, 48 L.Ed. 994, and authorities cited."

Section 8 of the Foraker Act, the first Organic Act for Puerto Rico, enacted on April 12, 1900, 31 Stat. 79, 48 U.S.C.A. §§ 735, 736, continued in effect the laws then in force in Puerto Rico, which no doubt included the above Spanish law of eminent domain. Then § 8 of the Foraker Act went on to provide that such laws would continue in effect until "altered, amended, or repealed" by the Puerto Rican legislature or by act of Congress. See also § 32 of the Foraker Act, 31 Stat. 83–84, 48 U.S.C.A. § 821.

All the parties apparently concede that the legislature of Puerto Rico proceeded to exercise this power of repeal in § 24 of the Act of March 12, 1903, which purported expressly to repeal the Spanish law of eminent domain of January 10, 1879. Section 23 of the same legislative enactment prescribed a somewhat similar right of reversion in condemnation cases in favor of "the party dispossessed" by the taking. But § 23 was subsequently repealed by the Act of March 12, 1908, and at the same time § 7 of the Act of March 12, 1903, was amended to give a limited right of reversion to "the party dispossessed or who voluntarily sold, transferred or encumbered his right of ownership". However, this modified § 7 of the Act of March 12, 1903, was itself repealed by the Puerto Rican legislature in its Act of May 7, 1948 (Laws P.R.1948, p. 246). The result is that neither at the time of the bankruptcy of the railroad corporation, nor at the present time, did or does there exist any statutory basis in Puerto Rican law for the assertion of a right of reversion as claimed by the present appellant.

■ It was not, and indeed could not have been, contended by appellant that the wholly speculative right of reversion which the party dispossessed originally acquired under the old Spanish law of eminent domain was such a property right as could not have been taken away without compensation by subsequent legislation passed prior to the happening of the event or condition upon which the right of reversion depended. See Ferry v. Spokane, Portland & Seattle Ry. Co., 1922, 258 U.S. 314, 320, 42 S. Ct. 358, 66 L.Ed. 635; Sagastivelza v. Puerto Rico Housing Authority, 1 Cir., 1952, 195 F.2d 289; Opinion of the Justices, Mass.1958, 151 N.E.2d 475; Trustees of Schools of Township No. 1 v. Batdorf, 1955, 6 Ill.2d 486, 130 N.E.2d 111. See also People of Puerto Rico v. United States, 1 Cir., 1942, 132 F.2d 220, certiorari denied, 1943, 319 U.S. 752, 63 S.Ct. 1165, 87 L.Ed. 1706; Restatement Property § 53, comment b (1936).

The view we have taken above renders it unnecessary for us to consider the correctness of other grounds which, to the referee or to the district court, seemed to point to the same legal conclusion.

A judgment will be entered affirming the order of the District Court.