MARTHA BROOKS ET AL., APPELLANTS, V. KIMBALL COUNTY, APPELLEE.

FILED SEPTEMBER 21, 1934.    No. 28915.

*G. P. Kratz,* for appellants.

*Roland V. Rodman, Orville C. Wisdom* and *John H. Kuns, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ.; and MESSMORE, District Judge.

MESSMORE, District Judge.

This is an action in equity brought to determine the title to real estate, for an adjudication for damages for waste committed thereon by defendant below, appellee herein, while in the possession thereof, and asking judgment for the reasonable rental value of the real estate since the time defendant's title ceased, for interest, costs and attorney's fees.    The court below found for the defendant.

The amended petition of plaintiffs below, appellants herein, alleges the necessary subject-matter in a case of this nature for the construction of a deed and forfeiture

of title and for the other relief prayed for, as above noted.

The defendant in answer thereto denies every allegation of said petition not expressly admitted; admits that Martha Brooks, one of the plaintiffs, was the legal guardian of plaintiff Frank D. Masner (L. R. Eastman was later substituted as guardian of said minor on July 26, 1933) ; that she brings this action as such guardian on behalf of herself and her ward; that Kimball county is a county established under the laws of Nebraska, a body corporate and politic, capable of suing and being sued; that on June 20, 1892, and prior thereto, one William Yannayon was the owner in fee simple title absolute and in possession of block 5, Yannayon's addition to the town of Kimball, in Kimball county; admits that William Yannayon died testate in 1899, without issue, leaving Sarah Yannayon, his widow, as his sole and only legatee and devisee; that Sarah Yannayon died in 1923, testate, without issue, leaving Martha L. Masner, her grandniece, and a grandnephew as her sole and only legatees and devisees; that Martha L. Masner is one and the same person as the plaintiff, Martha Brooks; that the defendant entered into possession of said block 5, Yannayon's addition, on or about the 20th day of June, 1892.

For the purpose of this opinion the affirmative defense, as stated in the answer of defendant to the amended petition of plaintiffs, need not be set out.

The evidence discloses that Kimball county became a separately organized county November 1, 1888, and in 1892 William Yannayon, a resident of the county at that time, deeded to the county the premises above described; that subsequent to the receipt of the deed the county proceeded to build a courthouse on the real estate described. For the purpose of this opinion it is necessary to set out the warranty deed showing the conveyance to the county by William Yannayon of the real estate in question, to wit:

"Warranty Deed

"Know all men by these presents:

"That William Yannayon and Sarah Yannayon of Kimball county, and state of Nebraska, in consideration of the sum of one & no/100 dollars, in hand paid by the county of Kimball of Kimball county, and state of Nebraska, do hereby sell and convey unto the said the county of Kimball and state of Nebraska, to wit: All of block five, Yannayon's addition to Kimball, Nebraska. The conditions of this deed is that the county commissioners of said Kimball county shall erect and maintain a county courthouse on said block. Together with all the tenements, hereditaments, and appurtenances to the same belonging, and all the estate, right, title, interest, claim or demand whatsoever of the said William Yannayon and Sarah Yannayon of, in, or to the same, or any part thereof.

"To have and to hold the above described premises, with the appurtenances, unto the said the county of Kimball.

"And we hereby covenant with the said the county of Kimball, that we hold said premises by good and perfect title; that we have good right and lawful authority to sell and convey the same, that they are free and clear of all liens and incumbrances whatsoever. And we covenant to warrant and defend the said premises against the lawful claims of all persons whomsoever.

"And the said Sarah Yannayon hereby relinquishes her right of dower in and to the above described premises.

"Signed this 20th day of June A. D., 1892.

"William Yannayon<br>"Sarah Yannayon

"In Presence of S. Wooldridge.

"The state of Nebraska ⎰ss
"Kimball county ⎱

"On this 20th day of June A. D. 1892, before me duly elected a clerk of the district court, Kimball Co. Nebr., and qualified for and residing in said county, personally came William Yannayon and Sarah Yannayon to me known to be the identical persons described in and who executed the foregoing conveyance as grantors and

acknowledged the said instrument to be their voluntary act and deed.

"Witness my hand and seal the day and year last above written.

"S. Wooldridge,

(Seal) Clerk of District Court."

Said instrument was entered on numerical index and filed for record in the clerk's office of said county on the 20th day of June, 1892, at 2 o'clock p. m., and recorded in book D of deeds on page 242.

There appears in the record a stipulation that any demand made by the plaintiffs against defendant for title to and possession of the premises involved in this action and for damages for the removal of the buildings and improvements therefrom would have been refused by defendant herein, if made.

Plaintiffs introduced in evidence all the records from the county court of Kimball county necessary to show that Sarah Yannayon was the sole and only heir and devisee of William Yannayon, who died testate, a resident of Missouri, on January 19, 1899; also all the records from said county court necessary to show the probate of the will of Sarah Yannayon, the petition for probate of her will setting forth that the devisees under her will were the parties who are the plaintiffs in this action, and that the said Sarah Yannayon departed this life on the 18th day of September, 1923.

The record further sets forth the deposition of C. F. Robertson, a lawyer and banker, 70 years of age, residing in Forreston, Illinois, formerly a resident of Kimball county from 1884 to 1893, and who held the office of county commissioner of said county in 1892 and 1893. He testified that the county commissioners were looking for a site upon which to build a courthouse for the reason that the county had inadequate quarters for the transaction of its business, and William Yannayon offered to deed the real estate in question in this case to the county, provided the commissioners would build and maintain a

courthouse thereon, with the understanding that when it was no longer used for that purpose it would go back to the grantor, and that said grantor was to receive nothing as pay for the block except that he was to get it back, if the county ever abandoned it as a courthouse site. The offer was accepted, William Yannayon and his wife, Sarah, conveying the premises to Kimball county by the deed hereinabove set out. The courthouse was built in 1892 or 1893 at a cost of approximately $10,000.

Martha Brooks, one of the plaintiffs, testified that she was raised on a farm nine miles southwest of Kimball in the home of Sarah Yannayon, her greataunt; that she was a sister of Frank D. Masner; that Sarah Yannayon had no children of her own; that she had overheard her aunt tell witness' mother several times that whenever Kimball county did not maintain the land for a courthouse it was to come back to her aunt, and that she had several conversations with her aunt to the same effect. These conversations occurred about 16 years ago.

There is considerable testimony offered by plaintiffs in an effort to prove the allegations of their amended petition regarding the value of the premises in question and damages for the destruction and removal of the buildings therefrom, but which is not necessary to be set out for the purposes of this opinion.

The defendant placed in evidence a petition to submit to the electors of the county the question of the construction of a courthouse, a petition by certain persons to accept a courthouse site, and articles of agreement between Kimball county and one John Biggs with reference to the acceptance of the completed structure.

Clara Masner was called as a witness for defendant. She was a niece of Sarah Yannayon and the mother of Martha Brooks and Frank D. Masner, plaintiffs. She testified that she lived with her aunt two years prior to her aunt's death and that she never heard any statement made to her by her aunt, in the presence of her daughter, wherein her aunt stated that whenever the county ceased to use the

courthouse site for county purposes it would come back to her, that she knew nothing about the courthouse site reverting to any person until after the death of her aunt, and that she gathered from a newspaper article.

Exhibit E, offered by defendant and received in evidence, is a communication, dated May 31, 1892, from William Yannayon, contractor and builder, addressed to the board of county commissioners of Kimball county, agreeing to donate to said county lots 1, 2, 3, 4, 5, 6, 7 and 8, block 1, Yannayon's addition to the town of Kimball, if the said board will locate and cause to be erected thereon the county courthouse.

Exhibit F, offered by defendant and received in evidence, is a similar offer from William Yannayon to the board, offering block 5, Yannayon's addition to Kimball, for the same purpose, and was filed March 28, 1892, by S. Wooldridge, county clerk.

John Pantenburg, called as a witness for plaintiffs in rebuttal, testified that he heard a conversation between Mr. G. P. Kratz, attorney for plaintiffs, and Mr. J. T. Jefferson to the effect that the piece of ground was to go back to the people who gave it to them, if they never used it for a courthouse or were done with it, Mr. Jefferson having previously testified that he was commissioner and assessor in 1891 and 1892 and that he did not remember if anything was said with reference to what would be done if the county would cease to use the block for a courthouse site.

This is the substance of the evidence material to a decision of this case.

The defendant county erected a new courthouse on a different site and the county officers moved into it in December, 1928. The old courthouse building was sold to one Guy Flemming, a wrecker, in January, 1929.

It is conceded by all the parties to this litigation that section 76-109, Comp. St. 1929, governs the construction of instruments in relation to real estate and the duty of the courts in respect thereto, which is as follows: "In the

construction of every instrument creating or conveying, or authorizing or requiring the creation or conveyance of any real estate, or interest therein, it shall be the duty of the courts of justice to carry into effect the true interest (intent) of the parties, so far as such intent can be collected from the whole instrument, and so far as such intent is consistent with the rules of law."

This court has passed on this section a great many times. In the case of *Eiseley v. Spooner*, 23 Neb. 470, involving a rent lease, this court established the rule as follows: "In the construction of an instrument conveying real estate, it is the duty of the court to carry into effect the true intent of the parties, so far as such intent can be collected from the whole instrument, and so far as such intent is consistent with the rules of law."

In the case of *McCulloch v. Valentine*, 24 Neb. 215, it was held: "It is a rule in the construction of deeds or wills, that the intention of the grantor or testator, as manifested by the words of the writing in connection with surrounding circumstances, must be carried into effect, provided in so doing no rule of law is violated or sound policy disturbed"—citing *Pool v. Blakie*, 53 Ill. 495; *Stokes v. McKibbin*, 13 Pa. St. 267.

This court held in *St. James Orphan Asylum v. Shelby*, 60 Neb. 796, speaking of a will: "The provisions of a will, like all other contracts, must be construed with a view of carrying out the intention of a testator, and unless there is something in it contrary to the law of the state, or in contravention of public policy, it will not be declared invalid."

This court held in *Arthur v. Arthur*, 115 Neb. 781, construing section 58, ch. 43, Laws 1866, enacted by our territorial legislature, and in force July 1, 1866, setting forth the same statutory enactment as contained in section 76-109, Comp. St. 1929, and previously in section 5594, Comp. St. 1922, that the law has been the same with reference to the construction of instruments from the time of the territorial legislature and government, and

that there has been no change in this statute except for a comma that did not change the meaning of the same in any particular, citing *Albin v. Parmele,* 70 Neb. 740, wherein it was held: "The first thing to be done is to ascertain, if possible, and unvexed by legal technicalities, the intent of the testator as expressed, or attempted so to be"—and several other cases following the same line of decision.

Plaintiffs contend that the fee, if any, granted to the defendant county is a base fee, that is, a fee which has a qualification annexed to it and which must be determined whenever the annexed qualification requires. The proprietor of such a fee has the right of an owner in fee simple until his estate is determined, or that it is a qualified fee, one which has a qualification subjoined to it, and which must be determined whenever the qualification annexed to it is at an end, and that there is a possibility of a reverter in the instrument; that when the property was abandoned by Kimball county for the purpose of erecting and maintaining thereon a courthouse a possibility of reverter existed.

In analyzing the instrument itself, one will note that it lacks an express right of reverter, that there is no indication of any kind or nature, in so far as the meaning of the words in the deed from William Yannayon to Kimball county is concerned, that would indicate that under any circumstances he desired to regain title to the premises either for his own use or for the use of his heirs or assigns. All the circumstances at the time of giving the instrument indicated that he proposed to give to the county a site upon which to erect and maintain a courthouse; that he owned some property in the immediate vicinity of the property granted, which would naturally be enhanced in value, and again he might have been inspired with some degree of civic pride. The documentary exhibits such as the offers of different sites would indicate that Mr. Yannayon desired to do something for his county, at least that thought could be readily and easily drawn

from all the circumstances and conditions existing at the time of the execution of the instrument and from the very instrument itself as an expression of the intent of the grantor as to what he most desired.

The English statute, 1 Vict. 1837, created possibilities of reverter and rights of entry for conditions broken and rendered them devisable. 8 and 9 Vict. statutes provided such rights were assignable or alienable. Appellants contend that no decision has held that the English statute of wills is not applicable in Nebraska. While we are convinced that such statutes are unnecessary and inapplicable to our conclusions in this case, yet we quote section 49-101, Comp. St. 1929, as follows: "So much of the common law of England as is applicable and not inconsistent with the Constitution of the United States, with the organic law of this state, or with any law passed or to be passed by the legislature of this state, is adopted and declared to be law within the state of Nebraska." In *Farmers & Merchants Ins. Co. v. Jensen,* 58 Neb. 522, wherein Chief Justice Harrison referred to the section of a prior statute which is now section 49-101, *supra,* it was held: "In terms and ordinary import the foregoing appears to be of the 'common law of England' and not of the statutory laws or of the former as modified by the latter." We believe that this statement, terse and concise as it is, reflects the statute, in that this state adopted the common law of England and not the statutory law of England. We find no other cases cited otherwise changing this conception as expressed by Chief Justice Harrison.

We construe this deed to be an outright grant by William Yannayon to Kimball county of the real estate in question, perhaps with a condition attached to it, which is a condition subsequent, that would require performance on the part of the county commissioners of that county, and which condition the commissioners did perform in erecting the courthouse on the block in question and maintaining it from about 1892 or 1893 to about December, 1928, which was a substantial compliance with the condition

654

subsequent and sufficient, we believe, to transfer to the county for all time to come the fee title to the real estate in question. Without any further or other expression in the deed it clearly shows it is without even the possibility of a right of reverter and at the most that is all that could exist in so far as the heirs of Sarah Yannayon are concerned.

In *Mead v. Ballard,* 74 U. S. 290, the supreme court of the United States held: "A grant of land, 'said land being conveyed upon the express understanding and condition' that a certain institute of learning then incorporated 'shall be permanently located upon said land,' between the date of the deed and the same day in the succeeding year, is a grant upon condition, a condition subsequent." Such permanent location was made and the condition was thus fulfilled, when the trustees passed a resolution locating the building on the land, with the intention that it should be the permanent place of conducting the business of the corporation. And this, notwithstanding that the building erected in pursuance of the resolution was afterwards destroyed by fire and the institute subsequently erected another building on another piece of land. · The condition was that the permanent location of the institute on the land should be made between the date of the deed and the same day in the succeeding year; if it was done within that time plaintiff's right to reverter was gone. This deed contained the right of reverter. The court held that it was a substantial compliance with the condition subsequent.

In *Maddox v. Adair,* 66 S. W. (Tex. Civ. App.) 811, the court held: "(1) Where a grantor conveys realty on condition that, on the grantee's failure to establish and maintain thereon a seminary of learning, it shall revert, and he does not object to the school established as not being that provided for by the deed, he cannot insist on a forfeiture, after the discontinuance of the school, on the ground that the grantee failed to establish the school required by the condition. (2) Where a grantor conveys

realty to be used for school purposes, in order to increase the value of adjacent property, on condition that, on the grantee's failure to establish and maintain the school, the premises shall revert, and a school is maintained until grantee has disposed of his adjacent property, he cannot claim a forfeiture after discontinuance of the school, as the purposes of the condition were fulfilled. (3) The condition of the deed having been complied with, and the grantee's title perfected, the grantor cannot complain of the abandonment of the property and the intrusion of a trespasser." The deed in this case recited a consideration of $100 and contained general covenants of warranty and was in the usual form, except that it provided for the premises to revert to the grantor. As indicated by the syllabus, no part of the consideration was paid. By its terms the deed conveyed an estate on a condition subsequent. The title passed to the grantee subject only to the condition. The law is well settled that such conditions will be strictly construed and substantial compliance with the conditions will prevent a forfeiture. A construction necessary to prevent a forfeiture will be adopted, unless it is clear such is not the intention of the parties. Citing *Post v. Weil,* 115 N. Y. 361.

In *Hunt v. Beeson,* 18 Ind. 380, that court held that there had been a substantial and sufficient compliance with the conditions of a deed, where the purpose of making the conveyance had been to secure the erection of a tanyard and such tanyard had been maintained for a period of 24 years. It was pointed out that the grantor had properly received the expected benefits and the court refused to decree a forfeiture.

In *Bryan v. Louisville & N. R. Co.,* 157 C. C. A. 98, 244 Fed. 650, the court held that when the railroad line was maintained as agreed for a period of forty years, there was a sufficient and substantial compliance with the terms of the covenant.

In *Texas & P. R. Co. v. Marshall,* 136 U. S. 393, the

grantee in a deed had agreed permanently to establish its eastern terminus on the property and did so locate its terminus thereon and maintained it for a period of eight years, when it became necessary by reason of the expansion of the railroad system to remove a part of its offices. The court held there was a substantial compliance with the terms of the contract and that even the use of the word "permanent" did not mean forever or lasting forever.

Some mention was made in this case with reference to the receipt by the trial judge of a brief from the clerk of the district court for Kimball county, which brief was prepared for the use of said clerk and given by him to the trial judge before the trial of this case. Counsel for appellants asked for a copy of the brief from opposing counsel, which request was denied. Counsel for appellants, without reflecting in any way on the court or without seeking to find any particular fault with the court's action, hints in his brief that the court was guilty of some misconduct. It was quite evident that the court had the brief and probably read it before the trial. It might have been a kindly and courteous act for opposing counsel to furnish appellants' counsel with a copy of the brief. We do not, however, believe the court was guilty of any misconduct nor appellants' rights prejudiced in any way by the court's use of the brief in question, under the circumstances.

We do not analyze other phases of the case called to our attention, for we deem them unnecessary for determination in this opinion.

We believe the court below was right in its findings in favor of defendant below, appellee herein, and for the reasons given by it on the insufficiency of the evidence to establish the claim set forth in plaintiffs' amended petition; that the construction of the deed in question, based on the sections of the statute quoted above and the decisions in reference thereto, was right, noting the instrument carried no express right of reverter, and that, if

anything, it might be interpreted as a condition subsequent, which has been, as shown by the authorities, substantially complied with.

AFFIRMED.