EDWIN J. OHM, ET AL., APPELLEES, v. CLEAR CREEK DRAINAGE DISTRICT, APPELLANT.

45 N. W. 2d 117

Filed December 15, 1950. No. 32849.

*Myrl D. Edstrom* and *Ralph D. Nelson,* for appellant.

*Clyde R. Worrall* and *H. A. Bryant,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This is a suit to quiet title to land in appellees. They and Clear Creek Drainage District, appellant, are the contesting parties.

The real estate, consisting partly of accretion land, is an irregular tract in Sections 17, 18, and 20, Township 14 North, Range 10 East of the 6th P. M., in Saunders County, described in detail in the petition and decree, and the unusually long description of it need not be repeated herein. Appellees claim to have acquired title thereto by adverse possession of more than ten years and by chain of title from John Peters and Lena Peters, husband and wife, who were once the owners of it in fee. Appellant asserts it is the owner of the real estate by purchase and conveyance to it by general warranty deed for a valuable consideration. The district court found

for appellees and by decree quieted the title to the premises in them. There is no irreconcilable conflict in the evidence. The appeal by appellant requires a determination of the case de novo without regard to the findings and decree of the district court.

The foundation of the claim of appellant that it is owner of the land affected by these proceedings is the warranty deed to it from John Peters and Lena Peters, husband and wife, who were the owners in fee simple of the land at the time of the execution and delivery of the deed. It contains the condition that the real estate conveyed is "to be used for ditching, diking and drainage purposes, and if abondoned or not used for that purpose to revert to" the grantors, their heirs and assigns. The habendum clause is without restriction, the warranties are unlimited, and the grantors "relinquish all right of homestead or other right, title or interest in and to the" premises. The position of appellees until after the trial and submission of the case in district court was that appellant claimed some title to and interest in the land, the facts concerning which were unknown to them. After the case was submitted in the district court, but before a decree was rendered, appellees obtained leave to amend and amended their petition and alleged that because of the "conditions, reservations and description" contained in the deed the district "acquired an easement only" to the real estate described in and conveyed by the deed. They have abandoned each of the positions taken by them in the district court as to the character of the estate conveyed by the deed, and now make the contention for the first time that the deed of Peters to the district "created a fee simple determinable." This contention is without foundation.

Restatement, Property, § 44, p. 121, states: "An estate in fee simple determinable is created by any limitation which, in an otherwise effective conveyance of land, (a) creates an estate in fee simple; and (b) provides

that the estate shall automatically expire upon the occurrence of a stated event." The comment is: "The existence of an estate in fee simple determinable requires the presence of a special limitation." Section 23, p. 55, defines special limitation: "The term 'special limitation' denotes that part of the language of a conveyance which causes the created interest automatically to expire upon the occurrence of a stated event, and thus provides for a terminability in addition to that normally characteristic of such interest." This is followed by an illustration: "A, owning Blackacre in fee simple absolute, transfers Blackacre 'to B and his heirs so long as the town of C remains unincorporated.' In the broad and usual meaning of the word 'limitation,' as used in this Restatement, the entire quoted phrase is a 'limitation.' The part of the quoted phrase beginning 'so long as' is a 'special limitation.'" See Univ. of Vt. and State Agri. College v. Ward, 104 Vt. 239, 158 A. 773.

Restatement, Property, § 45, p. 133, defines fee simple subject to a condition subsequent in this way: "An estate in fee simple subject to a condition subsequent is created by any limitation which, in an otherwise effective conveyance of land, (a) creates an estate in fee simple; and (b) provides that upon the occurrence of a stated event the conveyor or his successor in interest shall have the power to terminate the estate so created." Section 24, p. 59, defines condition subsequent: "The term 'condition subsequent' denotes that part of the language of a conveyance, by virtue of which upon the occurrence of a stated event the conveyor, or his successor in interest, has the power to terminate the interest which has been created subject to the condition subsequent, but which will continue until this power is exercised." The comment following this section states: "Whenever an estate subject to a condition subsequent is created, some person has the power to terminate this estate upon the occurrence of the stipulated event. Thus such an estate does not end automatically and by ex-

piration as does an estate subject to a special limitation. On the contrary, it is cut short, or divested, if, but only if, the person having the power chooses to exercise it."

A deed which conveys an estate in fee simple, but provides the grantor or his successor has power to terminate this estate, upon the happening of some event or condition, creates an estate in fee simple subject to a condition subsequent. Brooks v. Kimball County, 127 Neb. 645, 256 N. W. 501; Dyer v. Siano, 298 Mass. 537, 11 N. E. 2d 451; Halvorsen v. Pacific County, 22 Wash. 2d 532, 156 P. 2d 907, 158 A. L. R. 555; Northwestern University v. Wesley Hospital, 290 Ill. 205, 125 N. E. 13; Univ. of Vt. and State Agri. College v. Ward, *supra;* Dolby v. State Highway Commissioner, 283 Mich. 609, 278 N. W. 694, 117 A. L. R. 538; 26 C. J. S., Deeds, § 110, p. 400. The deed to the district created and conveyed to it an estate in fee subject to a condition subsequent.

The deed vested in the district all the rights of a fee simple owner of real estate until it ceases to use the land for the purposes specified and divestment of its estate by re-entry. Until such termination it has the same rights and powers in connection with the estate conveyed by the deed as if the condition did not exist. Restatement, Property, § 45, p. 133, comment a, says: "* * * When a transferor, having an estate in fee simple absolute transfers an estate in fee simple subject to a condition subsequent, the transferee is regarded as having received the entire estate of the transferor, who, by virtue of his reserved power of termination has the power to regain his former estate, if and when there is a breach of the condition subsequent." See, also, Halvorsen v. Pacific County, *supra;* Univ. of Vt. and State Agri. College v. Ward, *supra;* Union Colony v. Gallie, 104 Colo. 46, 88 P. 2d 120; 26 C. J. S., Deeds, § 147, p. 482. In any event, if appellees are to prevail in the litigation it must be upon the strength of their title to the land and not by any weakness in the title of appellant. Garner v. McCrea, 147 Neb. 541, 23 N. W. 2d 731.

The description in the deed to appellant is by metes and bounds and contains the following: "thence east on said line to the west bank of the Platte River, thence northwesterly along the west bank of said Platte River to a point where the west bank of the said Platte River intersects the north line of the Southeast Quarter of the Northeast Quarter of said Section Eighteen (18)," and "being a strip of land along the west bank of said Platte River, thirteen (13), feet west and parallel to the center line of the top of the said levee or embankment, and east from the center line of the top of said levee or embankment to the west bank of the Platte River, and extending through the real estate above described containing Twenty-two and three hundredths (22.03) Acres, * * *." Appellees contend that the premises conveyed extended only to the west bank of the river and that the deed did not convey to the thread of the stream of the Platte River and conveyed no part of the bed of the river. Where the bank of a nonnavigable river is mentioned as one of the boundaries of real estate conveyed by deed, the grant extends to the thread of the stream and accretions to the bank of the river attach to and become a part of the land conveyed. In Topping v. Cohn, 71 Neb. 559, 99 N. W. 372, this court said: "Where, at the time of a grant from the United States, the bank of a river formed a part of the boundary of the grant, subsequent accretions formed by the gradual recession of such bank attached to and became a part of the grant." In Haney v. Hewitt, 105 Neb. 746, 181 N. W. 861, it is said: "An owner of land on the shore of an unnavigable river, in the absence of restrictions in his grant, owns to the thread of the stream, and his riparian rights extend to existing and subsequently formed islands." See, also, Mulhall v. State, 140 Neb. 341, 299 N. W. 481; State v. Ecklund, 147 Neb. 508, 23 N. W. 2d 782; McBride v. Whitaker, 65 Neb. 137, 90 N. W. 966, 197 U. S. 510, 49 L. Ed. 857, 25 S. Ct. 530.

Clear Creek Drainage District, appellant, organized

to protect land in Saunders County and authorized to purchase such real estate as it reasonably required (§ 31-401 et seq., R. S. 1943), constructed a dike or embankment 10 to 15 feet high to prevent overflow of the Platte River from flooding the area of the district. A part of the dike extends through portions of Sections 17, 18, and 20, Township 14 North, Range 10. East of the 6th P. M., in Saunders County. The district purchased and there was conveyed to it by the fee simple owners thereof by general warranty deed, a part of the three sections described as a tract of land along the west bank of the Platte River from 13 feet west of and parallel to the center line of the top of the dike as located on the three sections and extending east to the west bank of the river. The dike was built before 1912 and has since been maintained. The stream of the river the entire distance across the land was "right close to the dike" from 1912 to 1919. Numerous jetties were constructed in the river opposite the land of the district— a new one about every year. It was necessary to have and extend jetties along the bank into the river to widen the area between the dike and the river and reduce the hazard to the dike. As land was formed by them they were covered up and they were again extended out in the water. Some have been extended three or four times to a total length of about 700 feet. Work of this nature was done in 1948. A part of the dike was sanded about 1940 by floating a boat down the river that had a pump on it that took sand from the bottom of the river and threw it against the bank. That is the way it was built up. The dike was inspected at least once a year. In 1946 after an inspection thereof, appellant requested appellees to repair the paths across the dike worn therein by their cattle passing over it and to keep the dike free from them, and appellees agreed to do so.

The area deeded to the district was fenced. A part of the fence along the west thereof was removed about the year 1933 as the result of an arrangement between

the owner of the pasture land west of a part of the land of the district and members of the board of the district. They thought it would be beneficial to permit stock to graze on and around the dike; that it would make it firmer. It was because of this that they consented to the removal of the fence and permitted stock of the adjoining proprietor to have access to and be upon the land of the district.

The owner of the land west of that of the district made no adverse claim to any of its real estate. He sold his land and deeded it to one of the appellees and he took possession in December 1935. He deeded a half interest therein to his brother in 1946 and he occupied the land commencing in 1947. The stock in their pasture wandered on and over the dike and land of the district. "* * * we have got a pasture on the west side of the dike and we run them in there, and then they can go over the dike to the other side any place they wish." There was no fence between it and the pasture land of appellees. They repaired the fences more or less which were necessary to retain the stock. They gave their consent to the construction of a cabin 14 x 14 feet on a part of Section 17, about half way between the dike and the river on land of the district, and collected $25.00 a year from the owner for three or four years, and after it was sold to Omaha parties appellees collected $50.00 a year for two or three years. Appellees collected some amounts from persons who wanted to hunt and fish. They gave evidence that the money they collected was for the privilege of going over their land to get to the river, but later they said: "We figured part of that for our trouble, and things of that sort" and part "for the right to hunt and fish on the river." They cut a small amount of wood for fuel in 1946 and 1947, but gave no details.

There is some mention by appellees of a written lease made by them in 1947 and recorded in the real estate records of the county, but it was not placed in

evidence and it is not shown that it is material or important to this controversy. It was not the intention of the appellees to claim any land owned by the district. Appellees intended to claim only what they thought was theirs. They knew the district had maintained and repaired the dike and jetties, but they did not know it owned any real estate until they looked up the record in 1947. They did not object to, attempt to interfere with, or prevent anything the district did on the land of which it was the record owner, or in or along the river adjacent thereto.

A person claiming title by adverse possession must, to establish it, prove open, notorious, exclusive, continuous, and adverse possession of the real estate for the full period of ten years. In Curren v. Certain Parcel of Land, 149 Neb. 477, 31 N. W. 2d 405, it is said: "To secure a title by adverse possession, the plaintiff must prove open, notorious, exclusive, continuous, and adverse possession of the real estate for the full period of ten years." See, also, Foltz v. Brakhage, 151 Neb. 216, 36 N. W. 2d 768; Garner v. McCrea, *supra.*

It is virtually undenied by any authority, and is asserted by a great majority of cases, that an essential element of adverse possession is that it shall be exclusive. In Hanlon v. Union P. Ry. Co., 40 Neb. 52, 58 N. W. 590, this is affirmed: "In order to create title by adverse possession, the possession, in addition to other elements, must be exclusive for the period of limitations." In Smith v. Hitchcock, 38 Neb. 104, 56 N. W. 791, this court said: "To constitute an adverse possession of land, such as, if it continued for ten years, would establish title in the occupant, it is necessary that he should actually hold the land as his own during that period, in opposition to the constructive possession of the legal proprietor." See, also, Hoffine v. Ewings, 60 Neb. 729, 84 N. W. 93; Knight v. Denman, 64 Neb. 814, 90 N. W. 863; Annotation, 15 L. R. A. N. S. 1196; 2 C. J. S., Ad-

verse Possession, § 47, p. 566; 1 Am Jur., Adverse Possession, § 141, p. 875.

The evidence does not show that the possession of appellant of the real estate, the subject of this action, has been questioned, interfered with, or interrupted. Appellees have no paper title thereto and the record establishes that they have not had exclusive possession thereof. They have not acquired title by adverse possession.

The decree of the district court should be, and is reversed, and the district court should be and is directed to enter a decree quieting title to the whole of the premises involved herein in appellant.

REVERSED AND REMANDED WITH DIRECTIONS.