STATE OF NEBRASKA, APPELLANT, v. COUNTY OF CHEYENNE, APPELLEE.

60 N. W. 2d 593

Filed October 23, 1953. No. 33372.

534

*Clarence S. Beck,* Attorney General, and *Robert A. Nelson,* for appellant.

*Jack R. Knicely,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

These proceedings were instituted by the County of Cheyenne to acquire by condemnation through the power of eminent domain for county fair purposes about 40 acres of state school or educational land a short distance from, but not adjoining, the west boundary of the city of Sidney. The land is described in detail in the record but because of its length and absence of necessity for it the description is not repeated in this opinion.

The appraisers made an award of $2,500 to the State of Nebraska because of the appropriation of the land by

the county. An appeal was taken by the State to the district court. There were no. pleadings filed in that court. The single inquiry there was the damages appellant had sustained by virtue of the county having taken the land. The trial in the district court resulted in a verdict of $5,959.16 for appellant. The motion of the State for a new trial was denied and judgment was rendered for it for the amount of the verdict with interest and costs. This appeal is from that judgment.

The appellee offered and there was received, over the objection of appellant, testimony that attendance of people at the Cheyenne County Fair increased in 1945, 1946, and 1947, and decreased each year thereafter including 1951; that there was very little interest in or activity at the county fair in 1952; that during the first 3 years referred to the "displays and exhibits" were more and better but that there has been a continual decrease since 1947; and that after 1947 special efforts made to encourage interest in the fair have not been successful. Appellee was also permitted to introduce evidence that because it could only use the land for fair purposes, and if it ceased to do so the land would revert to appellant, that the fair market value of the land was reduced as much as 75 percent.

The jury was instructed that the law provides that if the land taken by the county ceases to be used for the special purposes for which it was appropriated it shall revert to the State of Nebraska as educational land, and in determining the fair market value of the land taken if the jury found from a preponderance of the evidence that the reverter had a substantial determinate value then that value should be excluded. The state has authorized the taking of educational land by eminent domain for special purposes. § 72-213, R. R. S. 1943. Included in these is that a county may appropriate not to exceed 40 acres of such land located in the county for public purposes. § 72-219, R. R. S. 1943. This is subject to the condition that if the land ceases to be used for

the purpose for which acquired it shall revert to the state as educational land. § 72-223, R. R. S. 1943. Whether or not property acquired for county fair purposes is devoted to a public purpose is not made an issue herein. The significance in this case of the condition imposed by statute is that it creates only the possibility of a reverter. The estate acquired by the condemnation is to continue until the happening of a certain event and to then cease. That event, discontinuance of the land for fair purposes, may happen at any time or it may never occur. Until the determining event the proprietor of a determinable estate has all the rights and privileges of an absolute owner. The former owner retains at most a mere possibility of reverter should the event happen upon which the estate is limited. A possibility of reverter is not an estate or interest in land but is only the possibility of being an estate. It cannot have a value until it can be determined that the event upon which the estate is limited will happen and when it will occur. 19 Am. Jur., Estates, § 31, p. 491; 31 C. J. S., Estates, § 105, p. 125; Restatement, Property, § 53, p. 187; Connecticut Junior Republic Assn., Inc. v. Litchfield, 119 Conn. 106, 174 A. 304, 95 A. L. R. 56; Copenhaver v. Pendleton, 155 Va. 463, 155 S. E. 802, 77 A. L. R. 324; Magness v. Kerr, 121 Or. 373, 254 P. 1012, 51 A. L. R. 1466. In State v. Platte Valley Public Power & Irr. Dist., 147 Neb. 289, 23 N. W. 2d 300, 166 A. L. R. 1196, it is said: "Where the possibility of nonuser for the purposes for which the land is taken, and a reverter to the state under the provisions of section 72-223, R. S. 1943, is so remote that it has no substantial determinative value, it is not to be taken into consideration in determining the fair market value of the land taken."

The record does not show that any action was discussed, proposed, or taken to abandon or discontinue the county fair or to cease to use the land condemned as the place of its activities. It is not important what the county could or might have done in this regard. It is

important that it has a legal right to have and use the land in perpetuity for county fair purposes. Convincing evidence of its intention is the commencement of this case to condemn the land as a site for its fair as late as August 1952.

The court allowed appellee to offer proof that there was a gas well about 1½ miles and oil wells about 1 mile from the section of land of which the area condemned is a part; that the land involved in these proceedings "is strictly wildcat area"; and that the value of the minerals in the land was $25 to $30 an acre. The jury was charged that the county could not acquire by condemnation any mineral rights in the land and that in determining the fair market value of the land taken, if it found from a preponderance of the evidence that the mineral rights in the land had any value, that the value thereof should be excluded.

If there had been evidence that the land involved consisted in part of minerals and evidence of the probable extent thereof it would have been proper to have admitted evidence of the value of the mineral rights. In State v. Platte Valley Public Power & Irr. Dist., *supra*, it is said: "Under the provisions of section 72-223, R. S. 1943, a condemnor cannot acquire any mineral rights in the lands taken, and the value of the mineral rights, if any, is to be excluded in determining the fair market value of the land." The deficiency in this record in this regard is the absence of proof that there are any minerals in or under the land. Any evidence as to value of mineral rights in connection with this land was pure speculation. The inquiry of appellee to its witness assumed that there were "perpetual minerals under the tract of land." The charge of the court did not direct the jury to decide from the evidence whether or not there were minerals in or under the land, but it did admonish the jury to determine whether or not the "mineral rights in the lands taken" had any value and if they had the amount thereof should be by the jury deducted from the

market value of the land. It is prejudicial error for a trial court to submit to the jury a question of fact material to the case if there is no evidence from which a finding on the question can be made. Simcho v. Omaha & C. B. St. Ry. Co., 150 Neb. 634, 35 N. W. 2d 501.

Proof in the trial of a jury case should be confined to legal evidence which tends to prove or disprove an issue in the case. Evidence wrongfully received in such a case may not be considered without prejudice against whom it is admitted if it may have influenced the result as to him. If it does not appear from an examination of the record that the evidence wrongfully received did not affect the result of the trial its reception must be considered prejudicial error. In Thompson v. Wertz, 41 Neb. 31, 59 N. W. 518, it is said: "The proof must be confined to the issues as made by the pleadings, and the admission of irrelevant testimony in a case tried to a jury is prejudicial error where it may have influenced the verdict." See, also, Bee Publishing Co. v. World Publishing Co., 62 Neb. 732, 87 N. W. 945; Exchange Bank v. Gifford, 102 Neb. 324, 167 N. W. 69; Macke v. Wagener, 106 Neb. 282, 183 N. W. 360; In re Estate of Parvin, 131 Neb. 853, 270 N. W. 470. A consideration of the record prevents a conclusion that the jury was not influenced by the wrongfully admitted evidence on the subject of the effect of the statutory possibility of reverter of the land and the subject of mineral rights attached to the land. It cannot be said that the inadmissible evidence summarized above contributed less to the amount of the verdict than the other evidence. The evidence and the instructions on these subjects were improper and prejudicial.

Appellant in this case was not only entitled to receive but was obligated to make every reasonable effort to secure the fair market value of the land on August 15, 1952, without diminution on account of the possibility of reverter or the possible existence of minerals in or under the land. State ex rel. Johnson v. Central Ne-

braska Public Power & Irr. Dist., 143 Neb. 153, 8 N. W. 2d 841; State v. Platte Valley Public Power & Irr. Dist., *supra*. Appellant must obtain its damage in these proceedings for the property taken from it by the county and if it is denied full compensation now it will be hereafter without remedy. A landowner is assured by the Constitution of the state recovery in one action of the whole damage sustained by him because of the taking of his property by the power of eminent domain. All damages immediate and prospective which result from the taking of property by the exercise of the power of eminent domain must be compensated in the original condemnation proceeding. Churchill v. Beethe, 48 Neb. 87, 66 N. W. 992, 35 L. R. A. 442; Psota v. Sherman County, 124 Neb. 154, 245 N. W. 405; Snyder v. Platte Valley Public Power & Irr. Dist., 140 Neb. 897, 2 N. W. 2d 327; Burnett v. Central Nebraska Public Power & Irr. Dist., 147 Neb. 458, 23 N. W. 2d 661; Little v. Loup River Public Power Dist., 150 Neb. 864, 36 N. W. 2d 261, 7 A. L. R. 2d 355; Annotation, 133 A. L. R. 11.

The jury in deciding the fair and reasonable market value of the land was privileged to consider not only the use then actually made of it, but any and all uses to which the land was adapted and for which it was available, because market value includes the value of the property for any reasonable use to which it can and may be put. The condition, situation, and surroundings of the land and every fact and circumstance shown in evidence bearing upon its value and that would influence an intending good faith purchaser were proper for the consideration of the jury. If the land has a peculiar adaptation for a certain use this may be shown and considered and if it adds to the value of the land the owner is entitled to the benefit of it. Matters of this nature may properly be considered by the jury to assist it in reaching the final conclusion which is the reasonable market value of the property taken. Wahlgren v. Loup River Public Power Dist., 139 Neb. 489, 297 N.

W. 833; Langdon v. Loup River Public Power Dist., 144 Neb. 325, 13 N. W. 2d 168; Medelman v. Stanton-Pilger Drainage Dist., 155 Neb. 518, 52 N. W. 2d 328; Quest v. East Omaha Drainage Dist., 155 Neb. 538, 52 N. W. 2d 417.

The complaint of appellant that Exhibit 3 offered by it was improperly excluded is not well taken. The exhibit is not a complete or final drawing or plat. It bears evidence of this fact on its face in these words: "This study is simply a suggestion to assist the sponsor in meeting FHA planning objectives. The sponsors revised plan should be prepared by a competent technician and * * * should also be adapted to and indicate any existing conditions affecting the plan but not shown on this study." In any event the foundation was insufficient for introduction of the exhibit. It failed to show the correctness of the exhibit. The rule generally is that unofficial maps, plats, and the like are admissible in evidence when verified by testimony of witnesses having personal knowledge of their correctness.

The judgment should be and it is reversed and the cause is remanded to the district court for further proceedings.

REVERSED AND REMANDED.