TRUSTEES OF SCHOOLS OF TOWNSHIP No. 1 *et al.*, Appellants, *vs.* WILLIAM T. BATDORF *et al.*, Appellees.—
TRUSTEES OF SCHOOLS OF TOWNSHIP No. 1 *et al.*, Appellants, *vs.* ESTHER HELMS *et al.*, Appellees.

*Opinion filed October 26, 1955.*

HOUSE & HOUSE, of Nashville, for appellants.

JOHN R. SPRAGUE, and RUSSELL CLASSEN, both of Belleville, for appellees C. Don Donley and Jessie Donley; RUSSELL H. CLASSEN, of Belleville, for appellees Russell H. Classen and Alice D. Classen.

Mr. Justice Schaefer delivered the opinion of the court:

These two cases have been consolidated for opinion because they involve common questions of law and similar questions of fact. Both are actions to quiet title to certain school lands, and both are here upon direct appeal from decrees of the circuit court of St. Clair County which held unconstitutional the Reverter Act of 1947. Ill. Rev. Stat. 1953, chap. 30, pars. 37b to 37h.

One case involves the Batdorf school site, located on a one-half acre tract conveyed by warranty deed dated July 1, 1895, from John and Anna E. Batdorf to the Board of School Trustees and their successors for the purpose of "maintaining thereon a nonsectarian Free school according to the school laws of the State of Illinois, * * * Provided however that in case the Directors of said District No. Six fail to maintain a school, or said school shall be discontinued or removed then the above half acre to revert to the tract from which it was taken."

The other case involves the one-acre Hertel school site, which was conveyed to the school trustees by a warranty deed, dated June 26, 1893, from Frederick and Dorothea Helms "to be used for a public school building site, providing the same shal- not be used for dwelling purposes, and further provided, that when the premises cease to be used as a public school site, the land hereby conveyed shal- revert back to the tract from which it is now taken. All property belonging to the School District may be removed within one year from the time the premices have ceased to be used as above specified."

On March 12, 1949, the school districts which had operated the Batdorf school and the Hertel school were taken over by the newly organized Community Consolidated School District No. 70 of St. Clair County, Illinois. Classes were held in the Batdorf School continuously from 1895 until sometime in October, 1946. Since then the building

has been rented intermittently as a residence by District No. 70. The Hertel school operated continuously from 1893 until May 2, 1947. Since then the building has been vacant. No formal action has been taken at any time by District No. 70, or its predecessors, declaring either school site unsuitable, unnecessary, or inconvenient for a school. In 1951, however, the trustees of schools of the township anticipated the possibility of sale of the two sites, and brought these actions to have declared invalid, under the Reverter Act, any possibilities of reverter that might exist by reason of the deeds under which the school sites had originally been acquired.

The complaint in each case alleged that the plaintiff trustees held legal title to the school sites and the buildings thereon for the use and benefit of the plaintiff school districts; that the defendants claimed some interest because of the reversionary provision in each deed; that the defendants' claim was invalid by reason of the Reverter Act, and prayed that title be quieted in the plaintiffs.

The heirs of the respective grantors were made parties defendant in each of the cases. In the Batdorf case C. Don Donley and Jessie Donley filed a bill of interpleader which alleged that they were owners of the property by mesne conveyances from the original grantor; that school was no longer conducted in the building; that it was being rented for residential purposes, and prayed that they be decreed the owners. In the Hertel case Russell Classen and Alice Classen filed a joint answer and counterclaim which alleged that they were owners of 160 acres which included the one-acre school tract, by virtue of an award to them in kind in a partition suit; that they had been seized of an undivided one-tenth interest as heirs of the original grantor; that the tract had been abandoned for school purposes, and that as a consequence they were now its owners by way of reverter.

Each case was referred to a master, who recommended quieting title in the plaintiffs. In the Batdorf case the

master held that the possibility of reverter was inalienable, that the evidence of abandonment of the site for school uses was insufficient, and that the possibility of reverter had been destroyed by the Reverter Act, regardless of whether there had been an abandonment or of whether such abandonment had occurred before or after July 21, 1947, the effective date of the act. In the Hertel case the master held the possibility of reverter invalid under the act without reaching the question of abandonment. The circuit court declined to follow the recommendations of the master and entered a decree in each case holding that the possibility of reverter was alienable, and that the Reverter Act was unconstitutional as being an *ex post facto* law and in violation of the due process clauses of the State and Federal constitutions. The decree in the Batdorf case found that C. Don Donley and Jessie Donley, his wife, as joint tenants, were the owners of the property, and in the Hertel case that Russell Classen and Alice Classen were the owners.

Before we reach the principal issues, two preliminary matters should be mentioned. The first relates to the language of the original conveyances. Each deed provided that in the event the premises therein described ceased to be used as a school, the land should "revert to the tract from which it was taken." This language is anomalous, but the parties have construed the instruments as effective to create valid possibilities of reverter in the grantors, and we accept their construction. The second concerns the right of the Donleys and the Classens, appellees here, to claim an interest by way of reverter. In each case the plaintiffs have challenged that right. Since the attempts to alienate did not destroy the possibilities of reverter (*Pure Oil Co. v. Miller-McFarland Drilling Co.* 376 Ill. 486,) and since in each case the heirs of the original grantors were parties defendant, it is unnecessary to analyze the circumstances under which the claims of the appellees arose. The possibilities

of reverter survived the attempts to alienate in any event, and under our conclusion upon the primary issues in the case it makes no difference whether that interest was in the heirs of the grantors or in the appellees.

Sections 4 and 5 of the Reverter Act, if valid, control the decision of this case. They are:

"Sec. 4. Neither possibilities of reverter nor rights of entry or re-entry for breach of condition subsequent, whether heretofore or hereafter created, where the condition has not been broken, shall be valid for a longer period than fifty years from the date of the creation of the condition or possibility of reverter. If such a possibility of reverter or right of entry or re-entry is created to endure for a longer period than fifty years, it shall be valid for fifty years.

"Sec. 5. If by reason of a possibility of reverter created more than fifty years prior to the effective date of this Act, a reverter has come into existence prior to the time of the effective date of this Act, no person shall commence an action for the recovery of the land or any part thereof based upon such possibility of reverter after one year from the effective date of this Act. * * *" Ill. Rev. Stat. 1953, chap. 30, pars. 37e and 37f.

Each of the deeds in these cases was executed more than fifty years before the effective date of the act, July 21, 1947. The trial court found that the two sites had been abandoned for school purposes, but made no finding as to when the abandonments occurred. Under the Reverter Act such a finding is not essential in this case. If the abandonment took place after July 21, 1947, the possibilities or reverter are invalid under section 4. If the abandonment took place before July 21, 1947, section 5 bars defendants from asserting any claim based on these possibilities of reverter in this suit which was filed nearly three years after the effective date of the act.

Defendants challenge the constitutionality of the statute on the ground that it impairs the obligation of contracts, is an *ex post facto* law, and deprives persons of their property without due process of law, in violation of both the Illinois and the United States constitutions.

Section 4 limits the duration of a possibility of reverter where the condition had not been broken prior to the adoption of the act to a period of fifty years from the date of its creation. Although a possibility of reverter can pass by descent, (*North* v. *Graham,* 235 Ill. 178, 180,) it is incapable of alienation, devise or partition. (*Regular Predestinarian Baptist Church* v. *Parker,* 373 Ill. 607; *Trustees of Presbyterian Church* v. *Venable,* 159 Ill. 215; *Hart* v. *Lake,* 273 Ill. 60.) Until the limiting contingency occurs it is, as its name indicates, no more than an expectation,—a possibility that an interest in property may accrue in the future. Under the decisions of this court in *Prall* v. *Burckhartt,* 299 Ill. 19, and *People ex rel. Franchere* v. *City of Chicago,* 321 Ill. 466, it is subject to change, modification or abolition by legislative action. These decisions involved statutes enacted to cut off litigation of the title to vacated streets by the scattered heirs of deceased dedicators. They provided that upon vacation title should go to the abutting owners, and their validity was sustained. The court stated in the *City of Chicago case:* "Prior to the act in question, after the executing and recording of a statutory plat and its acceptance by the municipality, nothing remained in the dedicator but a mere possibility of reverter. * * * This possibility, not being an estate, was not protected by any constitutional limitation, and it was competent for the legislature to abolish this possibility of reverter or to change devolution of the title upon the happening of the future contingency in any way it saw fit, and * * * any legislative enactment to that end is not unconstitutional."

The legislature has modified or abrogated property

rights less remotely expectant than these possibilities of reverter, and its action has been sustained. So legislation was upheld which retroactively affected inchoate rights of dower and curtesy. (*McNeer* v. *McNeer*, 142 Ill. 388; *Henson* v. *Moore*, 104 Ill. 403.) Similarly the Contingent Remainder Act, (Ill. Rev. Stat. 1953, chap. 30, par. 40,) which terminated the right of the life tenant and the remainderman to destroy contingent remainders, has been applied to deeds and wills effective prior to adoption of the act. (*Wood* v. *Chase*, 327 Ill. 91; *Jennings* v. *Capen*, 321 Ill. 291.) In *Butterfield* v. *Sawyer*, 187 Ill. 598, a deed provided for a contingent remainder to the "heirs generally" of the life tenant, if she should die without issue. After the execution of the deed, the Adoption Act was amended to make an adopted child an heir. It was held that the interest of the heirs was contingent until the death of the life tenant, and that until that time the class could be enlarged by statute.

It has been said that the Reverter Act was passed in recognition of the operation of possibilities of reverter as "clogs on title, withdrawing property thus encumbered from the commercial mortgage market long after the individual, social or economic reason for their creation had ceased, and at a time when the heirs from whom a release could be obtained would be so numerous as to be virtually impossible to locate." (Comment, 43 Illinois Law Rev. 90.) The statute reflects the General Assembly's appraisal of the actual economic significance of these interests, weighed against the inconvenience and expense caused by their continued existence for unlimited periods of time without regard to altered circumstances. As a result of that appraisal, their potential duration has been limited to fifty years. A more sensitive treatment of the problem, perhaps by way of conferring equitable jurisdiction to extinguish such interests when they have ceased to serve any useful purpose, might

be thought preferable. ( See Carey & Schuyler, Illinois Future Interests, 1954 Pocket Supp., sec. 55; 14 University of Chicago Law Rev. 638, 645.) Our problem, however, is not that of choosing between alternative methods of handling the problems created by these interests, but the reasonableness of the method chosen by the General Assembly. We are unable to say that that method offends the constitutional provisions relied upon.

Section 5 of the Reverter Act deals with possibilities of reverter which had fallen in prior to the effective date of the act. It allows the holder of such an interest one year from the effective date to bring his action for recovery of the land. This section does not abolish or change any established or vested right. Rather it modifies the procedure for enforcing the right, by shortening the period of time in which suit may be brought. "The legislature may prescribe a limitation for the bringing of suits where none previously existed, as well as shorten the time within which suits to enforce existing causes of action may be commenced, provided, in each case, a reasonable time, taking all the circumstances into consideration, be given by the new law for the commencement of suit before the bar takes effect." (*Wheeler* v. *Jackson,* 137 U.S. 245, 255; see also *Ryhiner* v. *Frank,* 105 Ill. 326, 330; *Bradley* v. *Lightcap,* 201 Ill. 511, 519; *Koshoning* v. *Burton,* 104 U.S. 668, 675; *Terry* v. *Anderson,* 95 U.S. 628, 633.) In *McQueen* v. *Connor,* 385 Ill. 455, a statute reduced the time for filing will contests from one year to nine months. This court upheld the application of the act to an existing cause of action, where it was shown that plaintiff had more than eight months after the adoption of the act to file his suit. We think that the time allowed under section 5 of the Reverter Act was reasonable and afforded adequate opportunity to enforce rights which had vested prior to its enactment.

The decree in each case is reversed and the cause remanded, with directions to enter a decree as prayed for in the complaint.

*Reversed and remanded, with directions.*