MARTHA A. AVERY HIDDLESTON ET AL., APPELLANTS, V. NEBRASKA JEWISH EDUCATION SOCIETY, A CORPORATION, ET AL., APPELLEES.

186 N. W. 2d 904

Filed May 7, 1971. No. 37736.

Hunter, Venteicher, Caniglia & Kasher, for appellants.

D. C. Bradford and Howard Fredrick Hahn of Monsky, Grodinsky, Cohen, Garfinkle & Zweiback, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SMITH, J.

In this quiet title suit plaintiffs alleged that (1) their predecessors had conveyed to predecessors of defendants an estate in fee simple determinable; (2) the event stated in the conveyance had occurred, terminating defendants' interest; and (3) a statute providing for retroactive invalidity of possibilities of reverter such as that claimed by plaintiffs was unconstitutional. Defendants demurred, arguing the conveyance of an estate in fee simple absolute and the constitutionality of the reverter statute. From an order of dismissal on the demurrer plaintiffs appeal.

Plaintiffs are the heirs-at-law of Hiram R. and Minnie Avery, deceased. The Averys once owned an acre of land square in form and located in the corner of a section. On June 20, 1891, for a consideration of $100,

they conveyed the parcel by warranty deed to trustees of School District No. 60. Plaintiffs and defendants attach no signigifance to the trust, treating the conveyance as one directly to the district.

In the description of the land the Averys' deed stated: "This Deed is to become null and void as soon as the land ceases to be used as school property." No other language in the deed indicated conveyance of an estate lesser than a fee simple absolute. The land was used as school property until November 1968. The School District of Omaha, successor in interest to School District No. 60, then sold the land as surplus to the highest bidder.

An estate in fee simple determinable is created by any limitation which, in an otherwise effective conveyance of land, (1) creates an estate in fee simple; and (2) provides that the estate shall automatically expire upon the occurrence of a stated event. It requires a special limitation which causes the created interest automatically to expire upon the occurrence of a stated event, and thus provides for a terminability in addition to that normally characteristic of such interest. Dell v. City of Lincoln, 170 Neb. 176, 187, 102 N. W. 2d 62 (1960); Ohm v. Clear Creek Drainage Dist., 153 Neb. 428, 45 N. W. 2d 117 (1950). Circumstances in which grantors convey land may indicate an intent to create an estate in fee simple determinable and not an estate in fee simple absolute. Restatement, Property, § 44, Comment m, p. 129.

Defendants argue that the Averys simply set forth the purpose of the conveyance without limiting the estate conveyed. They cite what was then Article VIII (now Article VII), section 2, Constitution of Nebraska: "All lands, money or other property granted, or bequeathed, or in any manner conveyed to this state for educational purposes, shall be used and expended in accordance with the terms of such grant, bequest, or conveyance."

At the time of the Averys' deed a school district had power to purchase, hold, and sell such property as the law allowed. Laws 1881, c. 78, subdiv. I, §§ 2, 13, and 14, pp. 331, 335, and 336. From 1881 to 1905 its power of eminent domain was limited: "The school board . . . may . . . occupy the land as long as the district desires to use it for district purposes; but should the same cease to be used for school purposes it will revert back to the owner of the fee simple of the land from which it was taken on the payment by him of the amount originally paid for the land without interest. . . . When land is thus taken without the consent of the owner, it shall not be more in amount than one acre . . .." Laws 1881, c. 78, subdiv. XII, §§ 2 and 3, pp. 371 and 372. In 1905 a provision authorized city school districts to acquire an estate in fee simple absolute by eminent domain. Laws 1905, c. 136, pp. 567 to 570.

Averys' deed was subject to two statutory rules of construction. An otherwise effective conveyance transferred the entire interest which the grantor had power to convey, unless an intent to transfer a lesser interest was effectively manifested. Courts in construing deeds were to effect the true intent collectible from the instrument and consistent with rules of law. See Comp. St. 1887, c. 73, §§ 50 and 53, p. 579.

The constitutional provision for schools and the provision in the Averys' deed were nowise comparable. The deed conveyed an estate in fee simple determinable.

Section 76-2,102, R. R. S. 1943, whose constitutionality was challenged by plaintiffs, had been enacted by Laws 1959, c. 350, § 4, p. 1237. It provided: "Neither possibilities of reverter nor rights of entry or reentry for breach of condition subsequent, whether heretofore or hereafter created, where the condition has not been broken shall be valid for a longer period than thirty years from the date of the creation of the condition or possibility of reverter. If such a possibility of reverter or right of entry or reentry is created to endure for a

longer period than thirty years, it shall be valid for thirty years."

Constitutionality of a retroactive statute under the contract and due process clauses generally depends upon reasonableness. Relevant factors are the nature and strength of the public interest, the extent of modification of the asserted preenactment right, and the nature of the right altered by the statute. See, City of El Paso v. Simmons, 379 U. S. 497, 506 to 509, 85 S. Ct. 577, 13 L. Ed. 2d 446 (1965); Veix v. Sixth Ward Bldg. & Loan Assn., 310 U. S. 32, 60 S. Ct. 792, 84 L. Ed. 1061 (1940); Home Bldg. & Loan Assn. v. Blaisdell, 290 U. S. 398, 54 S. Ct. 231, 74 L. Ed. 413, 88 A. L. R. 1481 (1934). See, also, Hochman, "The Supreme Court and the Constitutionality of Retroactive Legislation," 73 Harv. L. Rev. 692 (1960); Note, 65 Colum. L. Rev. 1272 (1965). "The boundary at which the conflicting interests balance cannot be determined by any general formula in advance, but points in the line . . . are fixed by decisions that this or that concrete case falls on the nearer or farther side." Hudson Water Co. v. McCarter, 209 U. S. 349, 355, 28 S. Ct. 529, 52 L. Ed. 828 (1908).

Statutes somewhat similar to the one before us were invalid in Biltmore Village, Inc. v. Royal, 71 So. 2d 727, 41 A. L. R. 2d 1380 (Fla., 1954); and Board of Education of Central School Dist. No. 1 v. Miles, 15 N. Y. 2d 364, 207 N. E. 2d 181 (1965). On the other hand, the Supreme Court of Illinois in an opinion by Mr. Justice Schaefer in Trustees of Schools of Township No. 1 v. Batdorf, 6 Ill. 2d 486, 130 N. E. 2d 111 (1955) upheld a statute similar to ours. The Illinois court pointed out that possibilities of reverter were not voluntarily alienable inter vivos without indicating that the rule was crucial. See, also, Hijos v. Feliciano, 260 F. 2d 500, (1st Cir., 1958).

The value of possibilities of reverters as a class has been slight. Maturity of the interest in English common law was so rare that the courts did not expressly

decide whether a holder of a possibility of reverter might voluntarily alienate his interest inter vivos. Analogies of the law of rights of reentery and executory interests pointed to inalienability. I American Law of Property, § 4.65, p. 521 (1952). Contingent interests in land became alienable under 8 and 9 Victoriae, c. 106, § VI (1845), but our adoption of the English common law did not embody those statutes. Brooks v. Kimball County, 127 Neb. 645, 256 N. W. 501 (1934). Plaintiffs' possibility of reverter in the year 1959 had no such value that the eminent domain provision of the Constitution of Nebraska protected them. See State v. County of Cheyenne, 157 Neb. 533, 60 N. W. 2d 593 (1953).

The Legislature may reasonably have intended the reverter act to increase utility of land and marketability of titles by methods that were certain, uniform, and inexpensive. See Note, 65 Colum. L. Rev. 1272 (1965). Section 76-2,102, R. R. S. 1943, either on its face or in its application to plaintiffs, did not violate the due process or the contract clause of the United States or the Nebraska Constitution. The possibility of reverter was not protected by the eminent domain provision of the Constitution of Nebraska.

The judgment was correct.

AFFIRMED.

NEWTON, J., concurring.

I concur with the opinion of Smith, J. This case is one dealing with a fee simple determinable and a possibility of reverter. Whether or not a possibility of reverter consists of a vested or unvested interest in realty, it is clear that the contract or conveyance setting it up has provided for certain contract rights which vested upon the execution and delivery of the deed. In the past, such contract rights have ordinarily been held to be constitutionally protected against invasion by retrospective legislation. See Dell v. City of Lincoln, 170 Neb. 176, 102 N. W. 2d 62. It is a well-recognized rule that property and contract rights may not be interfered

with unless such interference can be justified under the police power. Unless so justified, the retrospective features of section 76-2,102, R. R. S. 1943, are clearly unconstitutional.

Changing or modern conditions have a direct bearing upon the interpretation of the police power. In Home Bldg. & Loan Assn. v. Blaisdell, 290 U. S. 398, 54 S. Ct. 231, 74 L. Ed. 413, 88 A. L. R. 1481, it is said: "The great clauses of the Constitution must be considered in the light of our whole experience, and not merely as they would be interpreted by its framers in the conditions and with the outlook of their time." It is further stated that the contract clause must be construed in harmony with the reserved power of the state to safeguard the vital interests of her people. Reservation of such essential sovereign power is read into contracts. The legislation is to be tested, not by whether its effect upon contracts is direct or is merely incidental, but upon whether the end is legitimate and the means reasonable and appropriate to the end.

Possibilities of reverter or reentry when incorporated in real estate conveyances frequently, as in the case before us, extend over long periods of time and from generation to generation. As a result, the present-day owners of such possibilities often cannot be ascertained or located and it becomes impossible to obtain releases in the ordinary manner. In the meantime, the use of affected property is restricted, its merchantability is destroyed, improvement and development are prohibited, it may run afoul of zoning regulations, and an entire community may be detrimentally affected. Determinable fees are akin to various types of restraints on alienation. Such restraints are contrary to public policy, are subject to strict construction, and frequently voided. Formerly, when this nation consisted primarily of rural areas and small villages, little if any harm resulted from such restrictive conveyances. With the increase in population and the growth of our cities, a different pic-

ture is presented. Were we to set down in the center of a modern city a 1-acre tract of land, the use of which was so circumscribed, it can be readily seen that the development of the city could be restricted and delayed.

Until the occurrence of the event which converts a fee simple determinable or possibility of reverter into a fee simple, the owner of the possibility has something of very little value, yet the damage to the community by reason of the existence of the determinable fee may be great. The benefits to be derived from the alleviation of such conditions, the correction of titles, and the restoration of affected properties to the market would appear to far outweigh the loss sustained by the individual holders of possibilities of reverter. Such legislation is in the public interest and promotes the public welfare. It is within the purview of and a reasonable exercise of the police power. The discretion of the Legislature is very large in the exercise of the police power, both in determining what the interests of the public require and what measures and means are reasonably necessary for the protection of such interests. Whether an exercise of the police power bears a real and substantial relation to the public interest and welfare, and whether it is reasonable or arbitrary are questions committed in the first instance to the Legislature and its decisions will not be interfered with by the courts unless clearly erroneous. See, 16 Am. Jur. 2d, Constitutional Law, § 281, p. 544, and § 282, p. 548.